COMMONWEALTH vs. MARTHA J. EAKIN
(and a companion case[1]).

No. 96-P-672.

Middlesex. June 5, 1997. - October 14, 1997.

Present: ARMSTRONG, BROWN, & GREENBERG, JJ.

Further appellate review granted, 426 Mass. 1107 (1998).

*State Building Code,* Criminal penalty. *Practice, Criminal,* Verdict.

At the trial of two complaints alleging criminal violations of the State Build-
ing Code in the alteration, reconstruction and repair of a building, the
defendants were entitled to dismissal of the complaints, where the Com-
monwealth had not provided the thirty-day notice before commencing
prosecution of the infractions the Commonwealth was seeking to prove, as
required by the then-applicable provisions of G. L. c. 143, § 51. [698-700]
In a criminal case, the defendants properly raised the issue of lack of suf-
ficiency of the required statutory notice, in a pretrial motion to dismiss the
complaints. [700-701]
At any retrial of complaints for violations of the State Building Code, certain
evidence relevant to the defendants' case should be admissible. [701]

COMPLAINTS received and sworn to in the Newton Division of
the District Court Department on December 9, 1991.

On appeal to the jury session of the Cambridge Division, the
cases were tried before *Arthur Sherman,* J.

*David J. Fine* for the defendants.

*Catherine E. Sullivan,* Assistant District Attorney, for the
Commonwealth.

GREENBERG, J. Tucked off Norwood Avenue, on a small lot in
a residential area of Newton, a two-family house at 74 Harvard
Street would become one of the city's worst nightmares.

On August 29, 1991, Walter B. Adams, the commissioner of
the city's inspectional services department (department), wrote
to the owners, quoting from a survey board report: "it is appar-
ent that the owner of the premises has failed to take adequate
measures to make the dwelling safe and to remove dangerous

[1]Commonwealth vs. Jeff Buster.

conditions that affect the habitability of the dwelling as well as the safety of the neighbors . . . ."

The property belongs to the defendants, Martha Jean Eakin and her husband (and contractor) Jeff Buster. Work had slowly progressed in fits and starts since a building permit for renovation of the structure had issued in 1981. Over the two years before the commissioner's last letter, attempts to get the defendants to complete an overhaul of the house had come to naught. By the summer of 1990, the project remained largely incomplete. Code inspectors found that the residence had fallen into general disrepair, portions of it had been abandoned and exposed to the elements, the basement was flooded, and the land around the house had begun to subside.

Concerned about the safety risk posed by the structure, a building inspector for the city had written to Eakin on September 7, 1990, advising her that the property was in violation of the State building code and demanding that she enclose the property with a fence and complete construction expeditiously. The defendants apparently took no action to improve conditions on the site in response to this letter.

On July 24, 1991, the defendants received the first in a series of letters from the commissioner ordering them to stop all work on the site and to arrange with the commissioner for an immediate inspection of the property. In addition, the letter directed the defendants to devise a plan for improving safety conditions on the site by (1) shoring up the excavation, (2) girding the temporary supports under the house, (3) erecting a fence around the site, and (4) covering exposed portions of the building to make it weathertight. The letter cautioned, however, "that none of these . . . activities [is] to take place without the specific approval of the Inspectional Services Department."

Shortly thereafter, the site was inspected, and, on August 2, 1991, the defendants each received identical letters styled "Notice to Remove or Make Safe." In essence, the letters again informed the defendants that unsafe conditions existed at 74 Harvard Street, contrary to the provisions of the building code. The defendants were advised that they had twenty-four hours either to carry out the safety improvements specified in the letter of July 24, 1991 (which were restated), or to demolish the building. Again, the defendants were unmoved, or, at least, failed to move.

On August 28, 1991, the building inspector wrote to the

defendants, stating that "[i]t is the intention of this department to seek criminal complaints against you in the Newton District Court for violations of the Massachusetts State Building Code." Attached to the letter was "a list of violations observed at the . . . site," which extended over eight pages. The list, however, consisted only of references to certain sections of the State building code (780 Code of Massachusetts Regulations), without any indication of the precise infractions observed at the site. Also absent from the letter was any mention of specific measures that the defendants might take to cure those defects in order to avoid prosecution.[2]

On August 29, 1991, the defendants received a letter from the commissioner captioned "Final Notice to Remove or Make Safe." This missive informed the defendants of the statutory penalties that they faced for the alleged violations of the building code. In addition, the commissioner again requested that the defendants undertake the safety improvements first outlined in the July 24, 1991, letter. The defendants were advised that they had forty-eight hours to complete those tasks before the city would undertake them on the defendants' behalf.

On December 9, 1991, the Commonwealth obtained 129 separate criminal complaints — thirty-nine naming Eakin and ninety naming Buster. With the exception of two "omnibus" complaints,[3] in which it was alleged generally that the defendants did "unlawfully alter, reconstruct and repair a building contrary to the provisions of the State Building Code," each of the complaints apparently was based upon a different building code violation.[4] Nearly four years passed before a trial was completed in the primary session of the Newton District Court. The judge joined all of the complaints for trial, a proceeding that spanned thirty-one days (spread out over two and one-half years from March, 1993, to October, 1995). By the time the first trial was completed, the city had obtained an order to demolish the house, and the house was demolished on July 1, 1994. On October 24, 1995, Eakin was convicted on twenty-six

---

[2]The letter did, however, invite the defendants to contact the department within five days to discuss the procedure. Similar letters had also been sent by the plumbing and gas fitting inspector on August 13, 1991, and by the inspector of wires on August 14, 1991.

[3]The two complaints were identical. One issued against defendant Eakin, and the other against defendant Buster.

[4]These original complaints, for reasons explained, *infra*, have not been made part of the record on appeal.

of the complaints and Buster on fifty-two, for a total of seventy-eight separate convictions. The defendants appealed to the Cambridge District Court seeking a de novo trial in the jury session.

Several weeks before commencement of the jury trial, the defendants moved to dismiss all of the complaints. At the hearing on December 23, 1995, the defendants argued three grounds: (1) they did not receive proper notice under G. L. c. 143, § 51; (2) the city gave them no opportunity to cure the alleged code violations as required by statute; and (3) the demolition of the property hampered their defense. The motion was denied. Understandably, their counsel complained about having to defend against so many complaints. The judge denied the Commonwealth's motion to join the separate complaints in a single proceeding; rather, he ordered that the complaints would be tried separately in serial trials before different juries. As the basis for his ruling, the judge cited the strong probability that, if all of the complaints were tried together, a jury would infer guilt based solely on the large number of individual charges.

In what it is reasonable to infer was an effort to mitigate the strategic setback inflicted by the judge's ruling on the joinder issue, the Commonwealth elected to proceed on the basis of the two "omnibus" complaints. In this way, despite the severance of the individual complaints, the Commonwealth would be entitled at trial to introduce evidence of all of the alleged violations, any one of which would support a conviction. In the end, however, the Commonwealth did not present evidence of all of the infractions charged in the complaints, limiting its presentation to (1) lack of proper fencing; (2) inadequate temporary supports; (3) lack of shoring for the excavation; (4) exposure to the elements; (5) the presence of a flooded pit in the basement; (6) exposed rusted elements in the poured concrete foundation; (7) improper access ramps; (8) overloaded floor supports; (9) improperly vented heating fixture; and (10) work in excess of the building permit. The first four of these violations were those addressed in the letters of July 24, August 2, and August 29, 1991. The remaining apparently were subsumed within the long list of alleged regulatory violations set out in the letter of August 28, 1991. On that evidence, after a four-day trial, a jury of six

found both defendants guilty. Motions for required findings of not guilty were denied.[5]

On appeal, the defendants have identified a plethora of alleged defects in the trial. To the extent that one of them, the Commonwealth's failure to provide (and prove) the requisite notice under G. L. c. 143, § 51, is dispositive in the defendant's favor, we focus on that claim.

*Discussion.* General Laws c. 143, § 94, imposes criminal sanctions for violations of the State building code. According to G. L. c. 143, § 51, as in effect prior to St. 1992, c. 66, § 1, the State may not prosecute until "the lapse of thirty days after [the] party in control has been notified in writing by a local inspector as to what changes are necessary to meet the requirements of [the relevant building code] . . . provisions . . . ." As to its prosecution of the defendants, and assuming the defendants could be prosecuted,[6] the commissioner, therefore, must have given the proper statutory notice before applying for criminal complaints against the defendants. *Commonwealth* v. *Porrazzo*, 25 Mass. App. Ct. 169, 177 (1987).

A similar situation arose in *Commonwealth* v. *Duda*, 33 Mass. App. Ct. 922 (1992). There, as here, the defendant was tried on a number of criminal complaints alleging violations of the building code. To satisfy the notice requirement of § 51, the Commonwealth relied upon a letter revoking the defendant's building permit, a second letter ordering him to cease work, the complaints themselves, and a bill of particulars. None of these communications was deemed sufficient as they failed to "advise[] the defendant what specific positive steps he should take to avoid criminal prosecution." *Id.* at 923. As a result, the defendant's convictions in *Duda* were reversed.

In the present case, the waters are somewhat muddier. Arguably, the letters of July 24, August 2, and August 29, 1991, informed the defendants in a detailed manner of four of the violations on which the complaints ultimately were based. Likewise, the letters carefully outlined the curative measures required to remedy those infractions. With respect to these violations, therefore, the requirements of § 51 likely were satisfied.

---

[5]On January 10, 1996, the prosecution "nol prossed" the remaining seventy-six complaints.

[6]The implications of the holding in *Santos* v. *Bettencourt*, 40 Mass. App. Ct. 90 (1996), should be explored before any retrial. In the absence of argument by either party, we do not reach issues raised by that case here.

As we have stated, however, the complaints obtained by the Commonwealth ultimately subsumed a very large number of violations, the majority of which were not alluded to in these letters. Rather, these violations were mentioned, if at all, only in the letter of August 28, 1991, from the building inspector. As noted, that letter listed only the code sections implicated, along with a verbatim recital of the text of each, but omitted any reference either to the precise nature of the infractions found upon inspection of the premises, or to curative measures that might be undertaken to forestall prosecution. Consistent with the *Commonwealth* v. *Duda* requirement of a notice that "advise[s] the defendant what specific positive steps he should take to avoid criminal prosecution," 33 Mass. App. Ct. at 923, this letter did not satisfy the requirements of § 51.

In these circumstances, were the Commonwealth to have proceeded to trial only on those complaints premised solely on the violations described in the letters of July 24, August 2, and August 29, 1991, the convictions might be safe. To sustain the convictions, however, would require us to overlook the following aspect of the record: the Commonwealth prosecuted the defendants on the basis of the "omnibus" complaints, the proof of which consisted (at least as tried) of evidence of many other infractions, including the presence of rotted access ramps, overloaded joists, an improperly vented propane heater fixture, improper window and door headers, and work exceeding the scope of the building permit. Owing to the "opaque" wording of the building code, the language, standing alone, does not provide "notice to the owner or person in control as to what he is required to do to avoid prosecution." *Id.* at 923 & n.1. See *Commonwealth* v. *Porrazzo*, 25 Mass. App. Ct. at 176 (for notice to be proper it must include measures necessary to remedy violation). Reliance on these violations, to the extent that they were not the subject of proper notice under § 51, rendered the prosecution unlawful.[7]

This conclusion is unaffected by the fact that the omnibus

---

[7]The judge concluded that the letters sent to the defendants between August 2, 1991, through August 14, 1991, were "satisfactory in substance if not in form of the notice requirements" of the statute. The August 2, 1991, letter, however, was limited in scope to the four violations first addressed in the July 24, 1991, letter. The letters of August 13 and August 14, 1991, addressed violations of the Massachusetts State plumbing code and the Massachusetts electrical code, respectively; the omnibus complaints, however, were limited to violations of the building code.

complaints could have been proved solely by reference to the infractions described in the letters of July 24, August 2, and August 29, 1991. The fact is, the jury were presented with a large body of alternative bases for conviction (in the form of the unnoticed infractions).

The Commonwealth might have avoided reversal if the judge had presented the jury with special verdict slips. As the record stands, however, we have no way of knowing on which violations the jury's verdicts actually were premised. Cases have repeatedly stated that when it is impossible to discern on which of multiple grounds a verdict rests, it must be supportable on all theories. See *Commonwealth* v. *Morgan*, 422 Mass. 373, 384 (1996). See also *Commonwealth* v. *Fickett*, 403 Mass. 194, 197 (1988) (jury's verdict cannot stand where it may have relied on alternate theories, one or more of which was not supported by sufficient competent evidence); *Commonwealth* v. *Flynn*, 420 Mass. 810, 818 (1995); *Commonwealth* v. *Plunkett*, 422 Mass. 634, 635 (1996). Because proof of notice is an element of the offense, see *Commonwealth* v. *Duda*, 33 Mass. App. Ct. at 923, a verdict resting on anything but one of the four properly noticed violations is unsupportable. In view of the Commonwealth's overinclusive approach, we cannot say with certainty that the jury "necessarily" and "unavoidably" relied on one of the properly noticed violations in reaching their verdict. *Commonwealth* v. *Blackwell*, 422 Mass. 294, 300 (1996). Contrast *Commonwealth* v. *Brooks*, 422 Mass. 574, 580 (1996) (reversal not required despite prejudicial error in instruction on one theory where it is clear that jury's verdict rests on alternate theory that was properly explained). To the extent that the verdict might have been based solely on the unnoticed violations, reversal is required.[8]

In reaching this conclusion, we have not ignored that the defendants presented a relatively weak defense to the substantive charges leveled by the Commonwealth. In this regard, however, we note that at the first trial the defendants were acquitted on more than fifty of the Commonwealth's complaints. This fact, while certainly not determinative of the issue, certainly suggests the possibility that the Commonwealth's

---

[8]Since the Commonwealth needed to prove only a single violation here to obtain a conviction, we could affirm if we could be sure that the jury relied on at least one of the properly noticed violations, even if they also relied on some of the unnoticed violations as well.

proof was not inviolate as to all counts. Again, to the extent that it is possible the jury here did not rely on the properly noticed violations, but rather those described only in the letter of August 28, 1991, the convictions must be reversed.

The Commonwealth tries to save the convictions by blaming the defendants for the lack of a special verdict. At trial, outside of the presence of the jury, the judge suggested the use of special verdict slips. Defense counsel objected, arguing that the jury might be confused into thinking that it would be in the defendants' favor to find them guilty of only some of the violations while acquitting on the remainder, even though the Commonwealth needed to prove only one violation to convict. After listening to the contentions of the parties, the judge decided to issue conventional verdict slips.

The Commonwealth now contends that it should not be faulted for the defendants' having prevented the use of the special verdict slips. While it may be true that the defendants opposed the use of special verdict slips, the judge nevertheless was left to decide the issue. A judge has wide discretion to determine the form of verdicts. See *Terrio* v. *McDonough*, 16 Mass. App. Ct. 163, 177 (1983); *Tenedios* v. *Wm. Filene's Sons Co.*, 20 Mass. App. Ct. 252, 256 (1985). The judge did not abuse his discretion in issuing conventional verdict slips to the jury. We note, however, that on remand the court should be mindful of *Commonwealth* v. *Accetta*, 422 Mass. 642 (1996), which was decided after the instant trial. In that case the court noted, prospectively, that, where alternative theories could support a guilty verdict, "we would expect . . . that any guilty verdict would be accompanied by an indication on the verdict slip of the theory or theories on which the jury based that verdict." Of course, we do not think it necessary to comment on whether our decision would be different had the jury specified the grounds of their conviction.

*Miscellaneous points.* Although not necessary to our decision, we touch on additional points. First, the Commonwealth alleges that the defendants erred in raising the question of the sufficiency of the notice under G. L. c. 143, § 51, by means of a pretrial motion to dismiss. Instead, the Commonwealth argues, the adequacy of notice was an element of the government's proof, and so should have been raised through a motion for a required finding of not guilty. The short answer is that the distinction is unimportant. If proof of notice is an element of

the offense, and the Commonwealth's proof thereof was inadequate, the verdict cannot stand. See *Commonwealth* v. *McGovern*, 397 Mass. 863, 867-868 (1986) ("findings based on legally insufficient evidence are inherently serious enough to create a substantial risk of a miscarriage of justice"). Further, *Commonwealth* v. *Duda* expressly holds that raising the question of sufficiency of notice under § 51 by means of "a pretrial motion to dismiss . . . [is the] preferred practice." 33 Mass. App. Ct. at 923. There was no defect, therefore, in the mode of the defendants' challenge below.

Finally, the judge excluded as irrelevant (1) a 1988 letter from a former building inspector and (2) testimony relating to a report to the Department of Social Services. We perceive these to be relevant to the defendants' case (and not necessarily excludable on hearsay grounds). Other remaining issues raised by the defendants are without merit or are unlikely to arise at any retrial.

The convictions are reversed as to both defendants, and the verdicts are set aside.

*So ordered.*