COMMONWEALTH vs. KENNETH GRANDISON.[1]

Hampden. May 1, 2000. December 8, 2000. - January 3, 2001.

Present (Sitting at Worcester): MARSHALL, C.J., ABRAMS, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Threshold police inquiry. *Arrest. Controlled Substances. Practice, Criminal,* Argument by prosecutor.

Police officers' following and observing a person who was walking on a sidewalk did not amount to an unlawful stop. [137-139]
Police officers had reasonable suspicion that a person who was walking away from them as they followed in their cruiser was carrying illegal drugs, and their stop of him was not unlawful. [139-140]
Evidence at a criminal trial was sufficient to warrant a rational trier of fact to conclude that the defendant possessed crack cocaine. [140-141]
No substantial risk of a miscarriage of justice arose from comments in the prosecutor's closing argument at a criminal trial. [141-143]
Evidence at a criminal trial was sufficient to warrant the defendant's conviction of resisting arrest under G. L. c. 268, § 32B, at the scene of the crime [144-145], but not at the police station after his arrest [145-146]; where the jury considered all the evidence of the defendant's conduct and may have, at least in part, rested their verdict on the events at the station, a substantial risk of a miscarriage of justice was created; a new trial was required [146-147].

COMPLAINT received and sworn to in the Springfield Division of the District Court Department on November 13, 1997.

A pretrial motion to suppress evidence was heard by *Alphonse C. Turcotte,* J., and the case was tried before *Robert L. Howarth,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Paul C. Brennan* for the defendant.

[1]After a rehearing on the issue whether the appropriate standard of appellate review was applied as it pertained to the trial judge's failure to give a specific unanimity instruction in connection with the charge of resisting arrest, the court withdrew its opinion at 432 Mass. 278 (2000), and issued this further opinion. — Reporter.

*Deborah D. Ahlstrom,* Assistant District Attorney, for the Commonwealth.

IRELAND, J. The defendant was convicted of possession of a class B controlled substance, and resisting arrest under G. L. c. 94C, § 34D, and G. L. c. 268, § 32B, respectively. He was acquitted on a count charging assault and battery on a police officer. On appeal, the defendant raises several issues: (1) whether the motion judge erred in denying his motion to suppress evidence of possession of crack cocaine; (2) whether there was insufficient evidence to convict him of possession of crack cocaine; (3) whether the prosecutor's closing argument so prejudiced the defendant that it created a substantial risk of a miscarriage of justice; and (4) whether he is entitled to a new trial because the charge of resisting arrest was predicated on distinct factual episodes and because, in the absence of unanimity instructions to the jury, there was insufficient evidence to sustain a conviction based on both episodes. We transferred this case to this court on our own motion and now affirm the judgment of conviction of possession of crack cocaine and reverse the judgment of conviction of resisting arrest. We discuss the facts as they are pertinent to the specific issues raised.

1. *Possession of Crack Cocaine.*

a. *Motion to suppress drug evidence.* The essential facts before the motion judge were as follows.[2] At approximately 9 P.M. on November 12, 1997, two Springfield police officers were on patrol in the area of Worthington and Federal Streets, known as a high crime area for illegal drug activity. The officers saw the defendant, a black male wearing a red puffy winter jacket, who, on seeing the cruiser, did an immediate "about face" and started walking in the opposite direction. The officer testified that, when the defendant turned to walk the other way, he and his partner became suspicious and decided to follow the defendant as he walked into a driveway.

When the police followed the defendant, he again reversed direction, so the officers turned on the cruiser's high beams and kept following the defendant, who then walked into an alley. The officers then turned on the cruiser's bright "alley lights." Officer Peck then saw the defendant appear to spit and saw a "small projectile" come out of the defendant's mouth and fall

---

[2]These facts are taken from the testimony of Officer Frederick C. Peck, III, the sole witness at the motion to suppress hearing. The motion judge made no written findings, discussed *infra.*

to the ground a few feet away from him. He testified that it is common for individuals to hide crack cocaine in their mouths and then to spit it out or swallow it to avoid detection by police.

At that point, Officer Peck yelled to the defendant to stop. The defendant stopped and the officers got out of the cruiser and approached the defendant.[3] One officer asked the defendant what he was doing and what he spit out. The other officer, given a general direction by his partner, searched the ground near the defendant and recovered a small, off-white item, wrapped in plastic, that the officers believed to be crack cocaine. They placed the defendant under arrest.

The defendant argues that the crack cocaine was obtained as the result of an illegal seizure and thus the motion judge erred in denying the defendant's motion to suppress the evidence. The motion judge, who has since retired, did not make any explicit factual findings. We have said that it is desirable and prudent to make a record of the facts, but a failure to do so is not reversible error. See *Commonwealth* v. *Forrester*, 365 Mass. 37, 45 (1974). See also *Commonwealth* v. *Gaulden*, 383 Mass. 543, 547 (1981), and cases cited. Absent explicit findings, we "analyze[] the record to see if the findings implicit in the judge's ruling are supported." *Id.*, citing *Commonwealth* v. *Williams*, 378 Mass. 217, 224 n.4 (1979).

The "judge's denial of the defendant's motion [to suppress] implies resolution of factual issues in favor of the Commonwealth." *Commonwealth* v. *Lanoue*, 392 Mass. 583, 586 n.2, 588 (1984), citing *Commonwealth* v. *Forrester, supra. Commonwealth* v. *Quigley*, 391 Mass. 461, 463 (1984), cert. denied, 471 U.S. 1115 (1985). Moreover, in reviewing a judge's ruling on a motion to suppress, an appellate court "may not rely on the facts as developed at trial" even where the testimony differed materially from that given at trial. *Commonwealth* v. *Garcia*, 34 Mass. App. Ct. 386, 391-392 (1993), citing *Commonwealth* v. *Singer*, 29 Mass. App. Ct. 708, 709 n.1 (1991).

Here, the testimony of Officer Peck, one of the arresting officers, was the only evidence presented at the motion hearing. The defendant argues that there was a stop when the police officers followed him into the alley, and that there was no reasonable suspicion, at that point, to justify the stop. We do not agree.

---

[3]There was no evidence presented that the officers had their guns drawn.

It is true that law enforcement personnel must have reasonable suspicion for pursuit to begin. See *Commonwealth* v. *Watson*, 430 Mass. 725, 731 (2000), and cases cited. But "pursuit begins only when action by police would 'communicate[] to the reasonable person an attempt to capture or otherwise intrude on [an individual's] freedom of movement.' " *Id.*, quoting *Commonwealth* v. *Williams*, 422 Mass. 111, 116 (1996). "It occurs when police attempt to stop an individual 'to effectuate a threshold inquiry.' " *Commonwealth* v. *Watson, supra*, quoting *Commonwealth* v. *Williams, supra* at 117. "Following or observing someone without more, such as using a siren or lights, attempting to block or control an individual's path, direction, or speed, or commanding the individual to halt, is not pursuit." *Commonwealth* v. *Watson, supra*, quoting *Commonwealth* v. *Williams, supra* at 116-117. See *Commonwealth* v. *Stoute*, 422 Mass. 782, 788-789 (1996), discussing *Commonwealth* v. *Thibeau*, 384 Mass. 762, 764 (1981). Following someone for the purpose of surveillance is not pursuit. *Commonwealth* v. *Watson, supra*, quoting *Commonwealth* v. *Williams, supra* at 116.

In this case, pursuit and a stop did not occur until Officer Peck commanded the defendant to stop and emerged from the cruiser.[4] Before that time, the police officers did not activate the cruiser's blue lights, flashers, or sirens. See *Michigan* v. *Chesternut*, 486 U.S. 567, 575 (1987); *Commonwealth* v. *Rock*, 429 Mass. 609, 611 (1999). We conclude that a reasonable person would have believed he was free to leave at the time: the record here does not support that the police blocked the defendant's course or otherwise controlled the direction or speed of his movement. *Michigan* v. *Chesternut, supra*. There was no evidence that the defendant was trapped in the alley.[5] We leave

---

[4]Cf. *Commonwealth* v. *Rock*, 429 Mass. 609, 611 (1999) (police asking, "Can I talk to you for a second?" not seizure); *Commonwealth* v. *Stoute*, 422 Mass. 782, 789 (1996) (no *Terry* stop when officer asks defendant to "hold up a minute," see *Terry* v. *Ohio*, 392 U.S. 1 [1968]); *Commonwealth* v. *Fraser*, 410 Mass. 541, 543 (1991). In this case, the Commonwealth concedes that a seizure occurred at the point that Officer Peck commanded the defendant to stop.

[5]On appeal, the defendant claims that he was "blocked" when the cruiser pulled into the alley and submits a hand-drawn map of the area introduced at trial to support his contention. The Commonwealth has moved to strike the map. As discussed *supra*, we do not consider any testimony not presented at the motion hearing. There was no evidence at the motion to suppress hearing regarding whether the defendant was "blocked" and thus not free to leave;

open the question whether shining bright alley lights on citizens could in some circumstances be a stop.

In the alternative, the defendant argues that, even if there was no pursuit, and the investigative stop did not occur until the police officer told the defendant to stop, there still was insufficient evidence for reasonable suspicion. We do not agree.[6]

A threshold inquiry is justified "where suspicious conduct gives the officer reason to suspect that a person has committed, is committing, or is about to commit a crime." *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974). Reasonable suspicion may not be based on good faith or a hunch, but on specific, articulable facts and inferences that follow from the officer's experience. See *Commonwealth* v. *Watson, supra* at 729, citing *Commonwealth* v. *Kennedy*, 426 Mass. 703, 710-711 (1998); *Commonwealth* v. *Williams, supra* at 116, citing *Commonwealth* v. *Willis*, 415 Mass. 814, 817 (1993). "The test is an objective one." *Commonwealth* v. *Helme*, 399 Mass. 298, 301 (1987), quoting *Commonwealth* v. *Silva, supra* at 406. Just being in a high crime area is not enough to justify a stop, see *Commonwealth* v. *Cheek*, 413 Mass. 492, 496 (1992), nor is walking away from police officers. See *Commonwealth* v. *Stoute, supra* at 788, discussing *Commonwealth* v. *Thibeau, supra* at 763-764 (no reasonable suspicion where defendant sees police officers and turns away on his bicycle). However, "[s]eemingly innocent activities taken together can give rise to reasonable suspicion justifying a threshold inquiry." *Commonwealth* v. *Watson, supra* at 729, citing *Commonwealth* v. *Alvarado*, 420 Mass. 542, 549 (1995), and cases cited. "An attempt to avoid contact with or observation by the police . . . may be

---

defense counsel simply asked the officer where the alleyway went, and he replied that one could go in the other side.

[6]"In evaluating the propriety of a *Terry* stop, we inquire whether the initiation of the stop was proper in the circumstances and whether the scope was justified by the circumstances." *Commonwealth* v. *Watson*, 430 Mass. 725, 729 (2000), citing *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974). See *Commonwealth* v. *Moses*, 408 Mass. 136, 140-141 (1990).

Although not raised by the defendant, in considering the scope of the stop, we look to the length of the encounter, nature of the inquiry, possibility of flight, and danger to the safety of the officers. See *Commonwealth* v. *Williams*, 422 Mass. 111, 118 (1996). Here, the scope was proper in the circumstances. There is no evidence that guns were drawn and the defendant was detained only a few moments until the officer found the packet of drugs and placed him under arrest.

considered along with other facts . . . ." *Commonwealth* v. *Wren*, 391 Mass. 705, 708 n.2 (1984), and cases cited.

In this case, the officers stopped the defendant who was present in an area with a high incidence of illegal drug activity, only after he walked away on seeing the police, and, when under surveillance, again changed direction before one officer saw the defendant spit a projectile out of his mouth. Based on the officers' knowledge that individuals hide illegal drugs in their mouths, these facts, taken together, were enough evidence to support reasonable suspicion that the defendant was carrying illegal drugs.[7]

b. *Sufficiency of the evidence.* The defendant argues that there was insufficient evidence to convict him of possession of cocaine.[8] We view the evidence at trial in the light most favorable to the Commonwealth, and "determine 'whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Commonwealth* v. *Lodge*, 431 Mass. 461, 465 (2000), quoting *Commonwealth* v.

---

[7]The defendant argues that the police could not have had reasonable suspicion because the testimony was that individuals spit out drugs when they are *running away* from police and swallow drugs when the police are closing in. Because he was not running when he allegedly spit out the drugs, the defendant argues that he did not fit the modus operandi of a person concealing drugs. This argument is without merit. The officer testified that individuals "normally" spit if they are running but that they both spit and swallow.

Furthermore, the defendant, relying on *Commonwealth* v. *Helme*, 399 Mass. 298 (1987), and *Commonwealth* v. *Houle*, 35 Mass. App. Ct. 474 (1993), argues that there could not be reasonable suspicion because there were other innocent explanations for what the defendant could have been spitting. These cases do not advance his cause. In *Commonwealth* v. *Helme, supra* at 302, the court held that just seeing a car parked with its engine running and the interior lights on was too broad to be the source of an investigation. In *Commonwealth* v. *Houle, supra* at 476, an officer demanded that a defendant spit out the contents of his mouth when there was no reasonable suspicion to have suspected he was involved in illegal activity.

[8]The defendant points out that he did not move for a required finding of not guilty at the close of the Commonwealth's case, but did so at the close of all the evidence. We consider the legal sufficiency of the evidence even if a defendant fails to move for a required finding of not guilty because "findings based on legally insufficient evidence are inherently serious enough to create a substantial risk of a miscarriage of justice." *Commonwealth* v. *McGovern*, 397 Mass. 863, 867 (1986), citing *Commonwealth* v. *Assad*, 19 Mass. App. Ct. 1007, 1008 (1985), and *Commonwealth* v. *Pickles*, 393 Mass. 775, 776 (1985), and cases cited. See *Commonwealth* v. *Sims*, 30 Mass. App. Ct. 25, 25 n.1 (1991) (discussing Mass. R. Crim. P. 25 [a], 378 Mass. 896 [1979], requiring judge to enter required finding of not guilty on own motion).

*Latimore,* 378 Mass. 671, 677 (1979). See *Commonwealth* v. *Basch,* 386 Mass. 620, 622 & n.2 (1982); *Commonwealth* v. *Campbell,* 378 Mass. 680, 686 (1979). Circumstantial evidence is sufficient to find someone guilty beyond a reasonable doubt and inferences drawn from such circumstantial evidence "need only be reasonable and possible; it need not be necessary or inescapable." *Commonwealth* v. *Lodge, supra,* quoting *Commonwealth* v. *Beckett,* 373 Mass. 329, 341 (1977).

The defendant argues that no jury could have rationally concluded that the crack cocaine the officer found on the ground near the defendant was the same item the defendant allegedly spit out. We disagree.

One of the officers testified that his partner indicated where he saw the defendant spit out the object. He said that he shone his flashlight on the indicated area and retrieved the crack cocaine. Without belaboring the point, it was a reasonable and possible inference for the jury to conclude, beyond a reasonable doubt, that the crack cocaine was the "small projectile" the officer saw the defendant spit out. The government need not exclude every possible hypothesis embracing innocence to prove its case. See *Commonwealth* v. *Merola,* 405 Mass. 529, 533 (1989).

c. *The prosecutor's closing.* The defendant argues that the prosecutor's closing argument was prejudicial. He claims that the prosecutor exceeded the bounds of proper argument by impugning the integrity of the defense,[9] vouching for the credibility of the police officers,[10] and expressing a personal opinion concerning the weight of the evidence.[11] The defendant did not

[9]The defendant points to the following:

"And how dare they, how dare they question the veracity of the officers from the Springfield Police Department. So that's what their defense is, that they planted the drugs on [the defendant] — Officer Fred Peck, over a thousand arrests, and he's going to plant drugs on [the defendant], he's going to plant a tiny little rock of crack on [the defendant]?"

"You know what happened. You've got [the defendant] sitting over there in the blue shirt telling a story different from the experienced police officers in the city of Springfield. And I think you know the reason that he's telling you that story." We note that the prosecutor went on to argue that the defendant had a motive to lie.

[10]The defendant points to the following:

"I'll tell you what happened, what happened is what the officers in the Springfield Police Department say happened, and they said that they saw [the defendant] walking down that alley."

[11]The defendant points to the following:

object, and thus, the standard of review "changes to the defendant's detriment." *Commonwealth* v. *Kozec,* 399 Mass. 514, 518 n.8 (1987), citing *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 416 (1978). We must determine whether there was an error that created a substantial risk of a miscarriage of justice. We appraise the closing argument as a whole as well as the judge's instructions to the jury. See *Commonwealth* v. *Tuitt,* 393 Mass. 801, 811 (1985), citing *Commonwealth* v. *St. Pierre,* 377 Mass. 650, 665 (1979). Furthermore, "[t]he absence of objection by defense counsel during or after argument may provide some guidance as to whether a particular argument was prejudicial in the circumstances." *Commonwealth* v. *Kozec, supra,* citing *Commonwealth* v. *Toro,* 395 Mass. 354, 360 (1985).[12]

In reviewing the prosecutor's argument as a whole and the judge's instructions to the jury, we determine there is no substantial risk of a miscarriage of justice because, with one exception, there was no error. See *Commonwealth* v. *Tuitt, supra* at 811; *Commonwealth* v. *Thomas,* 401 Mass. 109, 113 (1987).[13]

---

"Ladies and gentlemen, the case . . . is as weak as the Russian ruble. That defendant right there, right there in that chair . . . is guilty of possession of crack cocaine, he's guilty of resisting arrest, and he's guilty of an assault and battery on [a police officer]. I'm going to ask you to go back there and when you come out I'm confident you're going to come back with guilty verdicts on all charges."

[12]At trial, the defense argued that the defendant was set up by the police officers. The defendant testified at trial that he did not spit anything out of his mouth and that the crack cocaine at the scene did not belong to him. He also introduced a witness who claimed that he saw one of the police officers throw something behind the defendant and pick it back up. The witness claimed he also heard the defendant state that the drugs were not his.

In closing, defense counsel argued that one of the officers could not be believed because, defense counsel claimed, there were inconsistencies in his version of the events of that night. Such argument is proper. See *Commonwealth* v. *Murchison,* 418 Mass. 58, 60 (1994) ("In a case that essentially reduces to which of two conflicting stories is true, it may be reasonable to infer, and hence to argue, that one of the two sides is lying"); *Commonwealth* v. *Thomas,* 401 Mass. 109, 116 (1987) ("Where credibility is at issue, it is certainly proper for counsel to argue from the evidence why a witness should be believed"). The credibility of police officers is a proper subject of comment. *Commonwealth* v. *Murchison, supra.*

[13]The judge informed the jury that closing (and opening) arguments are not evidence, clearly stated the burden of proof, and told them that they were to determine the credibility of the witnesses.

It was improper for the prosecutor to suggest to the jury that it was impermissible for defense counsel to question the veracity of the police officers ("how dare they"). That is the essence of cross-examination. But that passing comment, not objected to, without more is unlikely to have made a difference to the jury. See *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 277 (1982) (jury can be expected to take closing argument "with a grain of salt"). The remaining challenged portions of closing were either fair responses to the defendant's closing arguments, supported by inferences from the evidence, or permissible hyperbole. See *Commonwealth* v. *Chavis*, 415 Mass. 703, 713 (1993), citing *Commonwealth* v. *Simmons*, 20 Mass. App. Ct. 366, 371 (1985), and *Commonwealth* v. *Smith*, 404 Mass. 1, 7 (1989) (proper for prosecutor to "make a fair response to an attack on the credibility of a government witness"); *Commonwealth* v. *LeFave*, 407 Mass. 927, 939 (1990) (Commonwealth has right to retaliatory reply); *Commonwealth* v. *Kozec*, *supra* at 516, citing *Commonwealth* v. *Earltop*, 372 Mass. 199, 205 (1977) (Hennessey, C.J., concurring) (prosecutors may make arguments for conviction based on evidence and "on inferences that may reasonably be drawn from the evidence"); *Commonwealth* v. *Santiago*, 425 Mass. 491, 495 (1997), *S.C.*, 427 Mass. 298, and 428 Mass. 39, cert. denied, 525 U.S. 1003 (1998), citing *Commonwealth* v. *Anderson*, 411 Mass. 279, 287 (1991) (jury have "ability to discount hyperbole"). Moreover, in this case, the jury were able to sort out any hyperbole because they did not find the defendant guilty on the charge of assault and battery on a police officer. See *Commonwealth* v. *Kozec*, *supra* at 517 (split verdict demonstrates that jury able to sort out excessive claims).

2. *Resisting Arrest.*

Based on the evidence at trial, the jury could have found the following additional facts.[14] In effecting the arrest, one of the officers tried to handcuff the defendant. The defendant, who was shouting obscenities, stiffened his arms and, for a second, was able to pull one of his arms free. The other officer came to aid his partner. In the meantime, two other officers had arrived at the scene and aided in getting the defendant's arms behind his

---

[14]Because the same facts concerning the defendant's movements and the action of the police officers that were before the motion judge were also brought out at trial, in the interest of efficiency, we need not recite them here.

back so that he could be handcuffed.[15] The defendant, who appeared agitated, never complied with a request to put his hands behind his back.

The police officers then took the defendant to the police station's booking area where a booking officer tried to obtain the defendant's identification information. The attempted booking was caught on a videotape activated by the booking officer. The defendant was shouting obscenities and would not cooperate, so the booking officer ordered him to be removed.

As the police officers were trying to move the defendant into a nearby cell, a scuffle took place.[16] One officer ended up on the floor and another managed to push the defendant into the cell, sustaining a bite to his arm in the process.[17]

The Commonwealth argues that the resisting arrest charge constituted a continuous event spanning the defendant's behavior at two distinct times: at the scene and at the police station. In addition, the Commonwealth contends that either event, in and of itself, could support the returned guilty verdict. We address each event.

a. *Resisting arrest at the scene.* The defendant contends that when the police officers tried to handcuff him, he merely stiffened his arms and broke free of the officer's grip for a second. Accordingly, he is not guilty of resisting arrest because the plain language of G. L. c. 268, § 32B, requires either using or threatening to use physical force or using "any other means" to create a "substantial risk of causing bodily injury."[18]

We do not agree with the defendant's contention that the officers' characterization of the defendant's behavior as "resisting" or "struggling" is mere opinion. At the scene, the defendant would not bend his arms to allow the handcuffs to be

---

[15]The scuffle with the four officers took somewhere between thirty seconds to one minute.

[16]The booking officer had turned off the video camera; the scuffle was not recorded.

[17]This scuffle with the officer who received the bite was the basis for the charge of assault and battery on which the defendant was acquitted.

[18]General Laws c. 268, § 32B, reads in pertinent part:

"(a) A person commits the crime of resisting arrest if he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest of the actor or another, by: (1) using or threatening to use physical force or violence against the police officer or another; or (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another."

placed on him and he managed to pull his arm away for a few seconds. It took four police officers to handcuff him. These actions fall within the statutory language. The defendant used "any other means" that created a "substantial *risk* of causing bodily injury" to the police officers (emphasis added). The type of resistance the defendant perpetrated could have caused one of the officers to be struck or otherwise injured, especially at the moment he freed his arm. If the conviction rested solely on this event, there would be no substantial risk of a miscarriage of justice[19] because a rational jury could have concluded that the defendant's behavior did create a risk of bodily injury beyond a reasonable doubt.[20]

b. *Resisting arrest at the police station.* The Commonwealth argues that resisting arrest also could include the defendant's behavior at the police station because the arrest was not complete until the defendant was placed in a cell. This argument lacks merit. Unlike those offenses that arise from "a continuing course of conduct," the resisting arrest statute states that the crime is committed, if at all, at the time of the "effecting" of an arrest. G. L. c. 268, § 32B. An arrest occurs where there is (1) "an actual or constructive seizure or detention of the person, [2] performed with the intention to effect an arrest and [3] so understood by the person detained." *Commonwealth* v. *Cook*, 419 Mass. 192, 198 (1994), quoting *Massachusetts Gen. Hosp.* v. *Revere*, 385 Mass. 772, 778 (1982), rev'd on other grounds, 463 U.S. 239 (1983). An arrest can occur even if the police do not make a formal arrest. See *Commonwealth* v. *Sanderson*, 398 Mass. 761, 766-767 (1986), citing *Terry* v. *Ohio*, 392 U.S. 1 (1968) (detaining defendant for approximately forty minutes in presence of six State troopers and one police dog is an arrest, not *Terry*-type stop). Coupling these notions of "arrest" with the statute's "effecting" language, it is apparent that a resisting arrest conviction can, in no way, rest on post-arrest conduct. Moreover, because the act of resistance was

[19]Where, as here, a defendant does not request a specific unanimity instruction nor timely object to its absence, "we limit our review to determining whether the instructions, as given, created a substantial risk of a miscarriage of justice." *Commonwealth* v. *Comtois*, 399 Mass. 668, 676 (1987), citing *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967).

[20]There is no right to resist a lawful arrest unless the officers are using excessive force. See *Commonwealth* v. *McMurtry*, 20 Mass. App. Ct. 629, 632 (1985), citing *Julian* v. *Randazzo*, 380 Mass. 391, 396 (1985); *Commonwealth* v. *Moreira*, 388 Mass. 596 (1983) (extending the rule to unlawful arrests).

separate and distinct from the events at the station, this instance of resisting arrest cannot constitute a continuing course of conduct. We note that, in different circumstances, the "continuing course of conduct" principle could conceivably factor into the prosecution of a resisting arrest charge. Where, as here, the two alleged incidents of resisting arrest constitute separate, distinct factual episodes occurring at different locations, and the arrest was "effected" at the scene, the "continuing course of conduct" principle clearly does not apply.

In this case, the defendant was actually seized and detained when the officer handcuffed him in the alley. A reasonable person would have believed he was under arrest. Because the "effecting" of the arrest took place at the scene of the crime, the defendant correctly argues that any subsequent conduct (i.e., the police station scuffle) has no bearing on the resisting arrest charge. Accordingly, it was error for the judge to allow the jury to consider the events at the station in the context of the resisting arrest charge.

This oversight has a further effect. It casts doubt on the validity of the guilty verdict on the resisting arrest charge. Although there was enough evidence of the defendant's behavior at the scene to sustain the denial of the defendant's motion for a required finding of not guilty of resisting arrest in the absence of either a specific unanimity instruction or special verdict forms, we cannot rule out the possibility that the jury impermissibly considered the events at the station in reaching their conclusion. *Commonwealth* v. *Conefrey*, 420 Mass. 508, 514 (1995) (reversing conviction where court "cannot know whether the jurors unanimously agreed that any particular incident occurred"). Cf. *Commonwealth* v. *Accetta*, 422 Mass. 642, 646 (1996) ("[w]e have held . . . that, where there is evidence of separate incidents, each of which could warrant a guilty verdict, the jury must be instructed that specific unanimity is required at least as to one incident"). The events in the station, depicted in the video, figured prominently in the prosecutor's closing: "When you watched that video tape, that wasn't a TV show you were watching . . . . That was real life, that's what really happened . . . . It was [the defendant] who was upset and yelling and swearing and screaming, standing next to two Springfield police officers who were, as you can see in the video or as you have seen in the video, smaller than he was . . . ." Moreover, the judge did not instruct the jury that the video

evidence was limited to the assault and battery charge and could play no role in their deliberation on the resisting arrest charge. Rather, the judge instructed them to "[c]onsider the evidence as a whole" and to "evaluate all the evidence," including "the testimony of the witnesses as you recall it, [and] any exhibits that you will take into the jury room with you." In failing either to strike the video evidence or to issue a limiting instruction, the judge implicitly authorized the jury to consider the events at the station in weighing the resisting arrest charge.

In these circumstances, "we cannot say with certainty that the jury 'necessarily' and 'unavoidably' relied" on solely the events at the scene in reaching their verdict. *Commonwealth* v. *Eakin*, 43 Mass. App. Ct. 693, 699 (1997), *S.C.*, 427 Mass. 590 (1998), quoting *Commonwealth* v. *Blackwell*, 422 Mass. 294, 300 (1996). Where the jury may, at least in part, have rested their verdict on an event incapable of supporting a guilty verdict, i.e., the events at the station, we find there is a substantial risk of a miscarriage of justice. Accord *People* v. *Moreno*, 32 Cal. App. 3d Supp. 1, 8-9 (1973) (judge erred in failing to instruct that finding of guilt would be improper if some jurors found resistance at defendant's home and others found resistance at jail). As a result, a new trial on this indictment is warranted.

We add that our determination here has no bearing on prosecutions based on a continuing course of conduct. Contrast *Commonwealth* v. *Sanchez*, 423 Mass. 591, 598-600 (1996) (defendant not entitled to specific unanimity instruction where victim spoke of repeated rapes "in generalities," "did not identify discrete instances when particular acts took place," and "there was no significant likelihood" that jury rendered guilty verdict on basis of different events); *Commonwealth* v. *Kirkpatrick*, 423 Mass. 436, 443-444, cert. denied, 519 U.S. 1015 (1996) (no risk of "nonunanimous verdict" where victim spoke generally about history of sexual abuse but could not "identify particular acts"); *Commonwealth* v. *Lewis*, 48 Mass. App. Ct. 343, 352 (1999) (no specific unanimity instruction required where single larceny comprised of successive takings achieved by a "single, continuing, criminal impulse or intent . . . pursuant to the execution of a general larcenous scheme"); *Commonwealth* v. *Thatch*, 39 Mass. App. Ct. 904, 904-905 (1995) (in rape case arising from "sequence of acts," facts revealed continuing course of conduct rather than succession of clearly detached incidents, thus specific unanimity instruction not required).

The judgment of conviction of resisting arrest is reversed, the verdict is set aside, and the case remanded to the District Court for a new trial. The judgment of conviction of possession of a class B substance is affirmed.

*So ordered.*

Justice Abrams participated in the deliberation on this case, but retired before the opinion was issued.