## COMMONWEALTH vs. RODERICK LENDER.

No. 05-P-1270.

Suffolk. April 12, 2006. - May 18, 2006.

Present: RAPOZA, BROWN, & GRASSO, JJ.

*Arrest. Resisting Arrest. Practice, Criminal,* Sentence. *Constitutional Law,* Sentence.

The evidence at a criminal trial warranted the defendant's conviction of a charge of resisting arrest in violation of G. L. c. 268, § 32B, where the defendant's resistance to being handcuffed and placed in a police cruiser amounted to "physical force or violence" or a means creating "a substantial risk of causing bodily injury" to the arresting officer. [304-306]

A criminal defendant failed to demonstrate that sentences imposed after conviction were based on improper factors or impermissible information in violation of constitutional principles. [306-308]

COMPLAINT received and sworn to in the Charlestown Division of the District Court Department on August 19, 2002.

After transfer to the Boston Municipal Court Department, the case was heard by *Michael J. Coyne,* J.

*Steven C. Reilly* for the defendant.

*Nicholas J. Kassotis* (*Amanda Lovell,* Assistant District Attorney, with him) for the Commonwealth.

GRASSO, J. Challenging the sufficiency of the evidence at his jury-waived trial, the defendant appeals from his conviction of resisting arrest.[1] See G. L. c. 268, § 32B. He also maintains that the judge relied on improper factors or otherwise impermissible information in sentencing. We affirm.

1. *Resisting arrest.* Shortly after 2 A.M. on August 19, 2002, State Trooper Eric Telford, who was in a marked cruiser and in

---

[1]The defendant was found not guilty of operating a motor vehicle while under the influence of alcohol and of drugs. He does not appeal from his conviction of operating a motor vehicle after suspension of license.

full uniform, observed a black Honda Civic automobile swerving between lanes for a distance of one-quarter mile on Route 99 between Everett and Charlestown. Telford activated the cruiser's blue lights and siren from one car length behind, but the Honda did not stop until it pulled into a gasoline station one-quarter mile away. Telford called for backup and then approached. He observed that all the windows of the Honda were rolled down and three people were inside, including the defendant, who was in the driver's seat. Telford smelled an odor of alcohol and freshly burned marijuana emanating from the vehicle.

When Telford ordered the defendant from the vehicle, the defendant rolled his eyes and would not comply. Telford observed that the defendant's eyes appeared bloodshot. At Telford's second command to get out, the defendant reluctantly exited. Telford directed the defendant to the rear of the vehicle, out of the view of the other two occupants. From this vantage, Telford could smell an odor of alcohol coming from the defendant and an odor of burnt marijuana on the defendant's clothing. He attempted to pat frisk the defendant, but the defendant twisted away and said that he knew his rights and that he need not comply.

Telford again attempted a patfrisk and the defendant again attempted to twist away. At that point Telford grabbed the defendant's arm and turned him around. The defendant was struggling with Telford, resisting attempts to pat him down, refusing to let Telford put him on the ground, and refusing to put his arms together to be handcuffed. Telford and the defendant fell to the ground in the struggle, and Telford secured the defendant on the cement surface of the gasoline station and handcuffed him.

After handcuffing the defendant, Telford tried to place him in the back of the cruiser, but the defendant resisted. The defendant's resistance to being placed in the cruiser occupied a span of forty-five seconds to one minute and did not cease until Telford shut the cruiser door with the defendant inside.

Viewed in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979), the evidence presented by the Commonwealth established that,

acting under color of his official authority, Trooper Telford (1) seized the defendant, (2) with the intention to effect an arrest, and (3) the seizure was so understood by the defendant. See *Commonwealth* v. *Grandison*, 433 Mass. 135, 145 (2001). Moreover, the quantum of resistance by the defendant was sufficient to amount to "physical force or violence" against the officer or a means creating "a substantial risk of causing bodily injury" to the officer. *Id.* at 144-145 & n.18.

The defendant first contends that Telford lacked a basis to perform a patfrisk of the defendant. In assessing the sufficiency of the evidence to support a charge of resisting arrest, the relevant inquiry is not whether the stop, frisk, and arrest would withstand a motion to suppress evidence. Rather, the proper focus is whether, at the time of the interaction, the officer, acting under color of authority, arrested the defendant, and whether the defendant resisted that arrest with force or violence or a means creating a substantial risk of causing bodily injury to the officer. See *ibid.* Even were a court to determine later that the initial patfrisk and subsequent arrest lacked reasonable suspicion or probable cause, the absence of either does not provide a defense to the charge of resisting arrest.[2] See *Commonwealth* v. *Moreira*, 388 Mass. 596, 601 (1983) (absent use of excessive force, defendant has no right to resist even unlawful arrest); *Commonwealth* v. *Gomes*, 59 Mass. App. Ct. 332, 341-343 (2003).

We agree with the defendant that the resisting arrest statute applies to arrests and not to patfrisks. See *Commonwealth* v. *Pagan*, 63 Mass. App. Ct. 780, 784 (2005). Considered in their entirety, however, the facts reveal more than mere resistance to a patfrisk. The defendant resisted not only Telford's initial attempt to pat frisk him, but also his efforts to handcuff him and place him in the cruiser, and the defendant ceased struggling

[2]The defendant's motion to suppress evidence was denied as to all evidence except the defendant's statements while in the cruiser. We need not decide whether, at the time Trooper Telford stood next to the defendant at the rear of the cruiser, he had probable cause to believe that the defendant was in possession of marijuana, compare *Commonwealth* v. *Correia*, 66 Mass. App. Ct. 174, 177 (2006), or was operating the motor vehicle while under the influence of alcohol or drugs. See *Commonwealth* v. *Blais*, 428 Mass. 294, 296 (1998); *Commonwealth* v. *Eckert*, 431 Mass. 591, 600 (2000).

and resisting only when the door to the cruiser closed. Compare *Commonwealth* v. *Smith*, 55 Mass. App. Ct. 569, 574-575 (2002) (resisting arrest statute cannot apply when police attempt to seize person only for purpose of threshold inquiry, as distinct from making arrest). Telford's handcuffing of the defendant and placing him in the cruiser satisfies the "arrest" component of the statute and provides sufficient basis for concluding that he intended to arrest the defendant and that the defendant understood this to be the case.[3] The defendant's resistance to being handcuffed and placed in the cruiser is sufficient resistance to amount to "physical force or violence" or a means creating "a substantial risk of causing bodily injury" to the arresting officer, as required under the statute. See *Commonwealth* v. *Grandison*, 433 Mass. at 144-145 & n.18 (stiffening arm and pulling arm free); *Commonwealth* v. *Katykhin*, 59 Mass. App. Ct. 261, 262 (2003) (stiffening body and initiating "tug of war" to avoid being placed in cruiser not purely passive conduct); *Commonwealth* v. *Maylott*, 65 Mass. App. Ct. 466, 467-469 (2006) (stiffening arms to resist handcuffing represents active physical refusal to submit to authority of arresting officers under either prong of statute).

In sum, the resistance Telford encountered was not solely to a patfrisk of the defendant. Compare *Commonwealth* v. *Pagan*, 63 Mass. App. Ct. at 784. Even assuming that Telford had not arrested the defendant when he began the initial patfrisk, by the time Telford placed handcuffs on the defendant and attempted to place him in the cruiser, the defendant was under arrest, understood that to be so, and was resisting that action. See *Commonwealth* v. *Grandison*, 433 Mass. at 144-145 (officer's characterization of defendant's behavior as "resisting" or "struggling" not mere opinion).

2. *Sentencing.* Prior to sentencing, the judge heard from the prosecutor and defense counsel and examined the defendant's probation record. Defense counsel emphasized that the defendant had no prior convictions; the prosecutor pointed out that the defendant's record included matters that had been

---

[3]Although not germane to the sufficiency of the evidence analysis because it was not elicited during the Commonwealth's case-in-chief, we note that the defendant testified that he repeatedly asked Telford why he was being arrested.

continued without a finding under probationary conditions. Both the prosecutor and defense counsel also addressed defaults on the defendant's record. At no time did defense counsel object to the judge's examination of the defendant's probation record or insist that the probation officer redact entries relating to "not guilty" findings before the judge reviewed the record.

The defendant now maintains that the sentences imposed were based on improper factors or impermissible information in violation of constitutional principles.[4] See *Commonwealth* v. *LeBlanc*, 370 Mass. 217, 221 (1976) (reliance on improper or impermissible factors in sentencing creates substantial risk of miscarriage of justice); *Commonwealth* v. *Souza*, 390 Mass. 813, 817-818 (1984). In particular, the defendant complains that the judge examined his entire probation record, including matters that had been dismissed, in violation of Mass.R.Crim.P. 28(d)(2), 378 Mass. 898 (1979).[5] We discern no error, and thus there is no substantial risk of a miscarriage of justice.

To the extent that the defendant's record included matters that had been *dismissed,* nothing in the Federal or State Constitutions, the rules of criminal procedure, or the General Laws prohibits the judge from viewing such matters. See *Commonwealth* v. *LeBlanc*, 370 Mass. at 220-221; *Commonwealth* v. *Goodwin*, 414 Mass. 88, 91-93 (1993). The prohibition of the rule speaks only to matters of which the defendant was found *not guilty.*[6] *Id.* at 91. The parallel statutory prohibition is to the same effect. See G. L. c. 276, § 85, as amended by St. 1956,

---

[4] The judge sentenced the defendant to ten days in a house of correction for operating a motor vehicle after suspension of his license and to six months, suspended for two years, for resisting arrest.

[5] The defendant's contention more properly addresses Mass.R.Crim.P. 28(d)(1). Given the relatively minor charges, the judge did not order a formal presentence investigation report from the probation officer. See Mass.R. Crim.P. 28(d)(2).

[6] Rule 28(d) of the Massachusetts Rules of Criminal Procedure provides in pertinent part:

"(1) *Criminal Record.* The probation officer shall inquire into the nature of every criminal case or juvenile complaint brought before the court and report to the court information concerning all prior criminal prosecutions or juvenile complaints, if any, and the disposition of each such prosecution, *except where the defendant was found not guilty.*

c. 731, § 15.[7] See also *Commonwealth* v. *Goodwin*, 414 Mass. at 91.

The defendant has made no showing that his record contained entries of "not guilty" findings, or that in passing sentence the judge used the record improperly or "punish[ed] the defendant for any conduct other than that for which the defendant [stood] convicted in the particular case." *Commonwealth* v. *LeBlanc*, 370 Mass. at 221. See *Commonwealth* v. *Goodwin*, 414 Mass. at 91. The defendant's probation record included in the record appendix contains no such entries.[8] See *Commonwealth* v. *Guerro*, 14 Mass. App. Ct. 743, 746 (1982) (defendant's burden to demonstrate sentence based on improper information). Even were we to assume that the record viewed by the judge at sentencing contained entries of prosecutions that concluded in findings of "not guilty," the sentencing transcript makes clear that the judge punished the defendant only for the conduct of which he stood convicted. Contrast *Commonwealth* v. *Henriquez*, 440 Mass. 1015, 1016 (2003).

*Judgments affirmed.*

---

Such information is to be presented before a defendant is admitted to bail in court, and also before disposition of the case against him.

"(2) *Report.* The report of the presentence investigation shall contain any prior criminal or juvenile prosecution record of the defendant, *but shall not contain any information relating to criminal or juvenile prosecutions in which the defendant was found not guilty.* In addition, the report shall include such other available information as may be helpful to the court in the disposition of the case." (Emphasis added.)

[7]The statute imposes on probation officers the duty to "present to the court such information as the commissioner of probation has in his possession relative to prior criminal prosecutions, if any, . . . and to the disposition of each such prosecution . . . before disposition of the case against [the defendant] by sentence, or placing on file or probation. Such record of the probation officer presented to the court shall not contain as part thereof any information of prior criminal prosecutions, if any, of the defendant wherein the defendant was found not guilty . . . ." G. L. c. 276, § 85, as amended by St. 1956, c. 731, § 15.

[8]That probation record bears a date of "11/19/2003." The defendant's sentencing occurred on May 13, 2004.