COMMONWEALTH vs. FRANKIE PORTEE.

No. 11-P-1808.

Hampden. September 14, 2012. - November 28, 2012.

Present: GREEN, FECTEAU, & MILKEY, JJ.

*Resisting Arrest. Threshold Police Inquiry.*

At the trial of an indictment charging resisting arrest under G. L. c. 268, § 32B, sufficient evidence existed to permit the jury to conclude that a reasonable person in the defendant's circumstances would have understood that the police were in the process of effecting his arrest, where, although the encounter had begun as a threshold inquiry, its character changed once the defendant committed an assault and battery on a police officer and the police responded by attempting to subdue the defendant and prevent him from fleeing. [832-833]

INDICTMENTS found and returned in the Superior Court Department on July 7, 2010.

The cases were tried before *C. Brian McDonald*, J.

*Adriana Contartese* for the defendant.

*Katherine A. Robertson*, Assistant District Attorney, for the Commonwealth.

GREEN, J. During a motor vehicle stop of a car in which the defendant was riding as a passenger, the defendant gave a State trooper a false name in response to an inquiry concerning his identity. Unfortunately for the defendant, the person whose name he gave was the subject of an outstanding arrest warrant. As the first trooper, and another who happened to arrive on the scene shortly thereafter, continued their inquiry of the defendant, the defendant tried to flee. In response to attempts by the troopers to restrain him, the defendant struck one of the troopers in the chest and shoulder, and thereafter continued to struggle with the troopers in an attempt to escape, striking both troopers repeatedly. He was eventually subdued and charged with several

offenses. After a jury trial he was convicted on two indictments charging assault and battery on a police officer, see G. L. c. 265, § 13D, and one charging resisting arrest, see G. L. c. 268, § 32B.[1]

On appeal, the defendant contends that his conviction on the charge of resisting arrest should be vacated, because at the time of his resistance the troopers were merely conducting a threshold inquiry and were not attempting to effect an arrest.[2] We conclude that, though the encounter began as a threshold inquiry, it escalated rapidly once the defendant struck the troopers, and that the defendant continued his resistance well after a reasonable person in his circumstances would have understood that the troopers were attempting to effect an arrest of him based on his attack. Accordingly, we affirm the convictions.

*Background.* We summarize the evidence, viewed in the light most favorable to the Commonwealth. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). On June 10, 2010, State Trooper John Driscoll, in uniform and in a cruiser, was patrolling the South End section of Springfield. At around 6:30 P.M., he ran the license plate number on a Chevrolet Impala automobile through the computer in his cruiser, which revealed that the automobile had failed an inspection in November, 2009. He stopped the car on East Columbus Avenue. There were two young women in the front seat; the defendant, Frankie Portee, was in the back seat. Trooper Driscoll noticed that the defendant was not wearing a seat belt and asked the defendant his name and date of birth in order to cite him for a seat belt violation. The defendant gave the false name of "Daniel Atkins" and a birth date of January 28, 1983.[3]

Trooper Driscoll conducted a search of the name "Daniel Atkins" using the computer in his cruiser, and learned that there was an active arrest warrant for a Daniel Atkins, who had a birth date indicating an age in approximately the same range as

---

[1] He was found not guilty of unlawful possession of a firearm, unlawful possession of ammunition, and unlawful possession of a loaded firearm.

[2] The defendant raises no claim regarding his convictions on the charges of assault and battery on a police officer.

[3] The defendant testified that he gave a false name because he had outstanding probation warrants.

the date provided by the defendant. Atkins's physical description appeared to match the defendant.[4] Trooper Driscoll returned to the car and had a further exchange with the defendant in an effort to ascertain whether he was the Daniel Atkins with an outstanding arrest warrant.

While Trooper Driscoll was speaking with the defendant, State Trooper Brian Gladu arrived at the scene. Trooper Driscoll asked Trooper Gladu to stand by, and then returned to his cruiser. When Trooper Driscoll looked back, he saw that Trooper Gladu had apparently asked the defendant to get out of the car. Trooper Gladu conducted a patfrisk of the defendant's person, which yielded (among other items) a folding pocket knife. Trooper Gladu kept the knife in his hand. Trooper Driscoll returned to the Impala to assist Trooper Gladu. He took the defendant by his belt from behind, moved him away from the Impala and onto the sidewalk, and continued the earlier inquiry about his identity.

In the meantime, Trooper Gladu leaned into the Impala to examine the area where the defendant had been seated. Before Trooper Gladu had time to look under the seat, however, he heard Trooper Driscoll yell, "Brian, Brian, he's trying to run, he's trying to run." Trooper Gladu looked over and saw Trooper Driscoll struggling with the defendant, who was "trying to run away, flailing and fighting." The defendant hit Trooper Driscoll in the chest and shoulder. He spun around and continued swinging his fists in an attempt to get away.

As the physical engagement continued, the defendant struck Trooper Driscoll at least three or four times, and Driscoll wound up on the ground. The defendant struck Trooper Gladu with his feet and his arms. During the melee, the troopers asked the defendant to give them his hands, and otherwise tried to subdue him. While the officers were struggling with the defendant, Trooper Gladu sprayed the defendant in the face with mace. Although the defendant gave some oral indications of compli-

---

[4]The active warrant was for a black male from Springfield who was five feet, eight inches tall and weighed 180 pounds. The defendant is five feet, eleven inches tall and weighed about 180 pounds when he was booked on June 10, 2010. Trooper Driscoll could not readily estimate the defendant's height while he was seated in the car.

ance after he was sprayed, he persisted in his attempts to get up and run. Trooper Gladu tackled him again. Eventually, the troopers were able to gain control of the defendant's hands and place him in handcuffs; they then placed him in the back seat of a cruiser.

*Discussion.* "A person commits the crime of resisting arrest if he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest of the actor or another, by: (1) using or threatening to use physical force or violence against the police officer or another; or (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another." G. L. c. 268, § 32B(*a*), inserted by St. 1995, c. 276. As specified in the statute, "the crime is committed, if at all, at the time of the 'effecting' of an arrest." *Commonwealth* v. *Grandison*, 433 Mass. 135, 145 (2001), quoting from G. L. c. 268, § 32B(*a*). The statute applies only to an arrest, however, and not to a pat-frisk or other threshold inquiry. See *Commonwealth* v. *Smith*, 55 Mass. App. Ct. 569, 575-576 (2002); *Commonwealth* v. *Lender*, 66 Mass. App. Ct. 303, 305 (2006). "An arrest occurs where there is (1) 'an actual or constructive seizure or detention of the person, [2] performed with the intention to effect an arrest and [3] so understood by the person detained.' " *Commonwealth* v. *Grandison, supra*, quoting from *Commonwealth* v. *Cook*, 419 Mass. 192, 198 (1994).

In the present case, the encounter between Trooper Driscoll and the defendant began as a threshold inquiry; the trooper initially requested the defendant's name and date of birth for the purpose of issuing a citation for failing to wear a seat belt, and then (after discovering that the person whose name the defendant had furnished was subject to an outstanding arrest warrant) continued his inquiry to determine whether the defendant was the person subject to the warrant. However, the fact that the encounter began as a threshold inquiry does not require that we consider its character unchanged as it progressed. See *Commonwealth* v. *Lender, supra* at 305-306. As we have observed, at some point during Trooper Driscoll's continued questioning of the defendant, the defendant struck Driscoll in the chest and shoulder. Thereafter, the defendant struck Trooper

Gladu as well. In response, both troopers attempted to subdue the defendant; they asked the defendant to give them his hands, and Trooper Gladu eventually sprayed him with mace. The defendant's combative behavior continued throughout the encounter, until the troopers eventually succeeded in placing handcuffs on the defendant and putting him in the cruiser.

"The standard for determining whether a defendant understood that he was being arrested is objective — whether a reasonable person in the defendant's circumstances would have so understood." *Commonwealth* v. *Grant*, 71 Mass. App. Ct. 205, 208 (2008). It is not necessary that officers use the word "arrest" when taking a defendant into custody. See *Commonwealth* v. *Powell*, 459 Mass. 572, 581 (2011), cert. denied, 132 S. Ct. 1739 (2012), and cases cited. The encounter in the present case began as a threshold inquiry, which was followed by a patfrisk. However, once the defendant committed an assault and battery on Trooper Driscoll, and Troopers Driscoll and Gladu in response sought to subdue him and prevent him from fleeing, a reasonable person in the defendant's circumstances would have understood that the troopers were in the process of effecting an arrest. See *Commonwealth* v. *Lender*, *supra* at 306. The evidence accordingly was sufficient to support the defendant's conviction on the charge of resisting arrest.

*Judgments affirmed.*