## COMMONWEALTH VS. CHUKWUNONSO OBIORA.[1]

No. 11-P-1111.

Essex. September 14, 2012. - January 8, 2013.

Present: GREEN, FECTEAU, & MILKEY, JJ.

*Firearms. Constitutional Law,* Search and seizure. *Search and Seizure,* Motor vehicle, Threshold police inquiry. *Threshold Police Inquiry. Evidence,* Firearm.

A District Court judge correctly denied the criminal defendant's pretrial motion to suppress a firearm and ammunition seized during a stop of the vehicle in which he was a passenger, where, given the discrepancy in the name of another passenger, the trooper involved was justified in taking further investigative measures, her removal of that passenger was not an intrusion disproportionate to the seriousness of the situation, and her directive to the defendant and the driver was also justified; and where, once the defendant violated that directive, the trooper's exit order to them and her subsequent search of the vehicle for weapons in the vicinity of the defendant were justified. [57-59]

At the trial of a criminal complaint charging the defendant with carrying a firearm without a license and possessing ammunition without a firearm identification card, the evidence was sufficient to prove that the defendant had knowledge of the weapon and ammunition, coupled with the ability and intention to exercise dominion and control over it. [59-60]

COMPLAINT received and sworn to in the Lawrence Division of the District Court Department on October 13, 2009.

A pretrial motion to suppress evidence was heard by *Mark A. Sullivan,* J., and the case was heard by *Barbara Savitt Pearson,* J.

*Alan H. Crede* for the defendant.

*Paul C. Wagoner,* Assistant District Attorney, for the Commonwealth.

GREEN, J. At issue in this appeal is the propriety of a warrantless search of a motor vehicle following a roadside stop. The

---

[1]We spell the defendant's name as it appears on the complaint.

search uncovered seventy-eight rounds of ammunition in a leather pouch beneath the passenger seat the defendant had occupied, and a small handgun lodged between the same seat and the car's center console. After a bench trial in the District Court, the defendant was convicted on charges of carrying a firearm without a license and of possessing ammunition without a firearm identification card. See G. L. c. 269, § 10(*a*), (*h*). On appeal, he argues that his motion to suppress the gun and ammunition should have been allowed, and that there was insufficient evidence to convict him. We discern no error in the order denying the motion to suppress and affirm the convictions.

*Background.*[2] At approximately 2:00 A.M. on October 13, 2009, State police Trooper Carolyn Mansi saw a car traveling at a high rate of speed down Interstate 93 in Andover. Her radar device registered the car's speed at eighty-three miles per hour. She pulled the car over and approached the passenger side. As she approached, she noticed that none of the three men in the car was wearing a seat belt. She asked the car's occupants for identification. The driver produced a driver's license and registration for the vehicle, but neither of the passengers produced identification in response to her request. Trooper Mansi asked the defendant, who was the front seat passenger, to write his name and date of birth on a piece of paper, along with the first name of the rear passenger. The defendant complied with that request, and he supplied an address and Social Security number as well. His note identified the rear passenger's first name as "Antoine." The trooper then asked the rear passenger to write down his own information. He identified himself as "Samuel Jean," and he provided an address and Social Security number.

In an effort to reconcile the discrepancy between the first name the rear passenger had given for himself (Samuel) and the name the defendant had provided for him (Antoine), Trooper Mansi asked the rear passenger (to whom we shall refer by the surname he provided, Jean) to step out of the vehicle. She instructed the vehicle's other two occupants to keep their hands

---

[2]Our summary of the facts is drawn from the motion judge's findings, supplemented by the testimony of Trooper Mansi, the only witness at the suppression hearing, which the motion judge expressly credited in full. The evidence adduced at trial was not materially different.

on the dashboard while she was speaking with Jean. Although both initially complied, after a short time the defendant lowered his hands to the floor and started "shuffl[ing] about by his feet . . . like he was trying to hide something or move something." Trooper Mansi again instructed the defendant to keep his hands on the dashboard, and she conducted a patfrisk of Jean. She then ordered the defendant and the driver out of the car and pat frisked them. She directed the three men to stand by the front of the car and conducted a quick search of the front passenger seat area, in the area she previously had seen the defendant moving about. Under the seat she found a small leather pouch labeled "American Firearm," which contained seventy-eight rounds of ammunition. Between the seat and the car's center console she found a small handgun. None of the car's occupants produced a license to carry the weapon or a firearm identification card.

*Discussion.* 1. *Motion to suppress.* The excessive speed at which the vehicle was traveling justified Trooper Mansi's decision to stop it, and the defendant does not contend otherwise. Moreover, Trooper Mansi's observation that the three occupants of the vehicle were not wearing seat belts supported a conclusion that all three had committed civil infractions.[3] See *Commonwealth* v. *Washington*, 459 Mass. 32, 40 (2011). The trooper was thus entitled to prolong the traffic stop for the purpose of issuing civil citations to the driver and each of the passengers.[4] Her request that the passengers identify themselves was minimally intrusive and reasonably necessary in order to issue the citations.[5] See *id.* at 38.

As the motion judge recognized, once Jean provided the trooper with a different first name than the one that the defendant had given for him, Trooper Mansi had reason to question the ac-

---

[3]See generally G. L. c. 90, § 13A, inserted by St. 1993, c. 387, § 1 (establishing a twenty-five dollar fine for riding in a private passenger vehicle without a safety belt).

[4]The defendant's reliance on *Commonwealth* v. *Torres*, 424 Mass. 153, 159-163 (1997), and cases cited, for the proposition that Trooper Mansi improperly prolonged a routine traffic stop once the driver produced a valid license and registration is accordingly misplaced.

[5]The defendant does not challenge the particular manner in which the trooper asked the passengers to write down their names.

curacy of the information the passengers had provided to her. She accordingly was justified in taking further investigative measures to reconcile the discrepancy. Moreover, as the defendant acknowledges, Mansi's decision to separate Jean from the others in the vehicle served a potentially useful investigative purpose. However, the defendant contends that the exit order to Jean was an intrusion disproportionate to the seriousness of the situation with which the trooper was confronted.[6] We disagree.

As the Supreme Judicial Court recently observed in *Commonwealth* v. *Cruz*, 459 Mass. 459, 466-467 (2011), there are three bases upon which an exit order issued to a passenger in a validly stopped vehicle may be justified: (i) an objectively reasonable concern for safety of the officer, (ii) reasonable suspicion that the passenger is engaged in criminal activity, and (iii) "pragmatic reasons." As to the first, "it does not take much for a police officer to establish a reasonable basis to justify an exit order or search based on safety concerns." *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 664 (1999). The test is an objective one, taking into consideration the totality of the circumstances. *Id.* at 665. In the circumstances of the present case, the trooper was outnumbered, three to one, late at night. Moreover, as we have observed, neither of the passengers produced proof of identification in response to Trooper Mansi's request, and the information they furnished concerning Jean's identity was inconsistent. Compare *Commonwealth* v. *Brown*, 75 Mass. App. Ct. 528, 536 (2009). The trooper justifiably could suspect that Jean had furnished false information concerning his identity in order to evade detection of outstanding warrants, or for other untoward reasons. See, e.g., *Commonwealth* v. *Portee*, 82 Mass. App. Ct. 829, 830 n.3 (2012). Viewed in the totality of the circumstances, a lone officer, late at night, having detained three persons and received false identification information from one of them, is justified in developing "a heightened awareness of danger that would warrant an objectively reason-

---

[6]Our view of the case does not require us to consider or adopt the Commonwealth's suggestion that Trooper Mansi's request that Jean "step from the vehicle" did not constitute an exit "order." But see *Commonwealth* v. *Washington*, 449 Mass. 476, 479 n.3 (2007), citing *Commonwealth* v. *Torres*, 424 Mass. 153, 158 (1997) ("[W]e doubt that the defendants, who were not free to leave at this point, would have felt free to refuse the trooper's request").

able officer in securing the scene in a more effective manner by ordering the passenger to alight from the car." *Commonwealth* v. *Gonsalves, supra* at 665, quoting from *State* v. *Smith,* 134 N.J. 599, 618 (1994). See *Commonwealth* v. *Riche,* 50 Mass. App. Ct. 830, 834 (2001) ("[I]t is a not uncommon practice for the police to respond to a chance of trouble by separating those in a stopped car from each other to frustrate interchange or collaboration among them").[7]

Trooper Mansi's further actions following the exit order to Jean were likewise measured and incrementally appropriate responses to the situation as it evolved. Mansi's directive to the defendant and the driver that both keep their hands on the dashboard was justified in light of the inherent risks we have observed. Once the defendant disobeyed that directive and began "shuffling" about in the area by his feet, the trooper's concern that the defendant might be reaching for a weapon was entirely reasonable, and her subsequent order directing the defendant and the driver to exit the vehicle, and her search of the vehicle for weapons in the vicinity of the defendant's movements, were plainly justified. There accordingly was no error in the judge's order denying the defendant's motion to suppress.

2. *Sufficiency of the evidence.* The defendant separately argues that there was insufficient evidence at trial that he had actual or constructive possession of the gun and ammunition. Viewing

[7]In a similar vein, the receipt of false identity information concerning Jean could give rise to reasonable suspicion that he was attempting to evade detection of an outstanding criminal warrant, making it reasonable and appropriate for the trooper to conduct further inquiry of him in a location removed from the others. Our view of the case does not require us to consider the nature or scope of "pragmatic reasons," independent of any concern for officer safety or suspicion of criminal activity, that might suffice to justify an exit order under the third category described in *Commonwealth* v. *Cruz,* 459 Mass. at 466-467. Likewise, we need not consider whether the defendant's disobedience of the reasonable order to keep his hands on the dashboard was an independent intervening action that "broke the chain of causation and dissipated the taint of [any] prior illegality." *Commonwealth* v. *King,* 389 Mass. 233, 245 (1983). Finally, we need not consider whether the defendant, who plainly had standing to challenge his own detention and the search of the vehicle, see *Commonwealth* v. *Amendola,* 406 Mass. 592, 601 (1990), also had standing to challenge the propriety of the exit order issued to Jean. Compare *Commonwealth* v. *Gonsalves,* 429 Mass. at 663 (describing the interests implicated by an exit order in terms of personal intrusion). See generally *Commonwealth* v. *Garcia,* 34 Mass. App. Ct. 386, 389-390 (1993).

the evidence in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), we disagree. The firearm was wedged between the seat in which the defendant was sitting and the center console in a manner that rendered it easily accessible to him. The weapon was not hidden; Mansi saw it from a "bird's eye view" even before she entered the vehicle. The ammunition was found under the defendant's seat in the area where he had been observed "shuffling." In addition, the car belonged to the defendant's girlfriend, and he had possession of it for the previous twenty-four hours. In the circumstances, a fact finder reasonably could have inferred that "the defendant had knowledge of the weapon [and ammunition], coupled with the ability and intention to exercise dominion and control over it." *Commonwealth* v. *Sadberry*, 44 Mass. App. Ct. 934, 935 (1998). See, e.g., *Commonwealth* v. *Bienvenu*, 63 Mass. App. Ct. 632, 638 (2005); *Commonwealth* v. *Cotto*, 69 Mass. App. Ct. 589, 593-594 (2007); *Commonwealth* v. *Elysee*, 77 Mass. App. Ct. 833, 846-847 (2010).

*Judgments affirmed.*