NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-610

COMMONWEALTH

vs.

FELIX EDILIO DELEON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant, Felix Edilio DeLeon, was convicted of resisting arrest.  He argues on appeal that the evidence was insufficient to demonstrate that he knew that he was being arrested and thus the judge abused her discretion in denying his motion to set aside the verdict.  We affirm.

Background.  On the morning of March 1, 2023, a woman working at a liquor store in Gardner "looked out to the parking lot," and saw a "car parked in the front" with the sole occupant "slumped down."  The occupant, subsequently identified as the defendant, was "very unresponsive[,] was nodded down, [had his] eyes . . . closed, [was] not moving at all, [and was] stiff."

The woman was concerned that the defendant was having a medical emergency, so she went to the car, knocked on the window, and "screamed really loud." The defendant "finally raised his head, had a dazed stare," and appeared to be confused. Based on her concerns for the defendant's health and well-being, the woman called the police "to do a well check."

Officer Kevin Goguen was soon dispatched to the liquor store, and on arrival saw the defendant, sitting in the driver's side seat of the parked car, "kind of leaned over a little bit." Officer Goguen knocked on the window a couple of times and the defendant "kind of waved his arm . . . like to go away." At some point, Officer Goguen attempted to open the driver's side door to the car and speak to the defendant "to make sure that he was all right," but the defendant "was holding the door shut and not letting [Officer Goguen] open the door." During their interaction, Officer Goguen saw that the defendant "had a beer bottle that was in the center console, [and the defendant] moved it down below by his left leg."

Officer Goguen next asked the defendant "to exit the [car]." The defendant refused and stated that he was not getting out of the car. After several additional requests by Officer Goguen to get out of the car, the defendant opened the driver's side door, "grabbed the beer bottle that was down by his leg, . . . dumped out the contents of the bottle[,] and

2

threw the bottle underneath the car."  After the defendant ignored further requests to get out of the car, and another officer arrived at the scene, the defendant "stepped on the brake and actually started the car."  Sergeant Lorin Walter then arrived at the scene and saw the other officers talking to the defendant while the car was running.  Sergeant Walter asked the defendant if he had been drinking that day, and the defendant replied, "Yes."  Sergeant Walter opined that the defendant "was clearly intoxicated."

After speaking with the defendant for approximately fifteen minutes and asking him multiple times to step out of the car, the officers decided to remove him from the car.  In response to the officers' efforts, the defendant "tensed up," physically fought the officers, and stated, "I'm not getting out.  You're going to have to fight me."  The officers told him to "stop resisting," but he continued to struggle.  Sergeant Walter issued verbal warnings to the defendant and deployed his taser, but the defendant continued to fight.  After Sergeant Walter deployed his taser a second time, the officers succeeded in placing the defendant under arrest.[1]

---

[1] Surveillance video footage depicting much of the interaction between the defendant and the officers was admitted as an exhibit at trial.

Following the jury verdict, defense counsel made an oral motion for judgment notwithstanding the verdict,[2] arguing, "there was no evidence to show that the police communicat[ed] an intention to arrest.  There was never a subjective belief that the officers had an intention to arrest."  The judge denied the motion, and this appeal ensued.

Discussion.  We review the denial of the defendant's motion to set aside the verdict under Mass. R. Crim. P. 25 (b) (2), as amended, 420 Mass. 1502 (1995), for abuse of discretion.  See Commonwealth v. Doucette, 408 Mass. 454, 455-456 (1990).  In this context, a trial judge (as well as the reviewing court on appeal) must "assess the legal sufficiency of the evidence by the standard set out in Commonwealth v. Latimore, 378 Mass. 671, 677 (1979)."  Doucette, supra.

For the crime of resisting arrest, the Commonwealth must prove that a defendant "knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest" by either (1) "using or threatening to use physical force or violence against the police officer"; or (2) "using any other means which creates a

_____

[2] Although articulated at trial as a motion for judgment notwithstanding the verdict, on appeal the defendant correctly refers to his posttrial motion as a "motion to set aside the verdict" under Mass. R. Crim. P. 25 (b) (2).

4

substantial risk of causing bodily injury" to the police officer. G. L. c. 268, § 32B (a). The crime of resisting arrest is committed at the time of the "effecting" of an arrest. Commonwealth v. Grandison, 433 Mass. 135, 145 (2001), quoting G. L. c. 268, § 32B. An arrest is "effected when there is (1) 'an actual or constructive seizure or detention of the person, [2] performed with the intent to effect an arrest and [3] so understood by the person detained.'" Commonwealth v. Grant, 71 Mass. App. Ct. 205, 208 (2008), quoting Grandison, supra.

Here, the defendant contends that the Commonwealth failed to establish the third element of arrest -- i.e., that the defendant understood or knew that he was being arrested. "The standard for determining whether a defendant understood that he was being arrested is objective -- whether a reasonable person in the defendant's circumstances would have so understood." Grant, supra. "It is not necessary that officers use the word 'arrest' when taking a defendant into custody." Commonwealth v. Portee, 82 Mass. App. Ct. 829, 833 (2012), citing Commonwealth v. Powell, 459 Mass. 572, 581 (2011), cert. denied, 565 U.S. 1262 (2012).

With these standards in mind, we turn to the facts of the present case, viewed in the light most favorable to the Commonwealth. See Latimore, 378 Mass. at 676-677. Despite

5

being asked myriad times to open his car door, the defendant refused. While in the car, he attempted to hide an open container of alcohol by his feet and subsequently opened the car door, poured the contents of the bottle out, and threw the bottle under the car. When the defendant attempted to close the car door, the officer stood between the door and the car to prevent the defendant from closing it. The officers ordered him several times to "exit the [car]," but he refused, engaged the officers physically, and told the officers that he was "not getting out," and that the officers were "going to have to fight [him]." As he spoke with the officers, he turned on the car while, in the opinion of an experienced officer, he was "clearly intoxicated." He was ordered to shut off the ignition and was warned that he would be tased if he did not get out of the car, yet he continued to fight and not comply with the officers both before and even after being tased. This evidence was more than sufficient to establish that a reasonable person in the defendant's circumstances would have understood that he was being arrested.[3] Indeed, by presenting evidence of the defendant

---

[3] That the encounter began as a wellness check "does not require that we consider its character unchanged as it progressed." Portee, 82 Mass. App. Ct. at 832. We further note that the officers had probable cause to believe that the defendant was operating a motor vehicle the influence of alcohol and probable cause that he was committing an open container violation.

engaging the officers physically, turning on the car, and continuously not complying with the officers' requests and commands, the Commonwealth established that "a reasonable person in the defendant's circumstances would have understood that the [officers] were in the process of effecting an arrest." Portee, 82 Mass. App. Ct. at 832-833 (sufficient evidence that reasonable person in defendant's circumstances would have understood police were in process of effecting arrest where encounter that began as threshold inquiry changed once defendant committed assault and battery on police officer and police responded by attempting to subdue him and prevent him from fleeing). Therefore, the judge did not abuse her discretion in denying the defendant's posttrial motion to set aside the verdict.

Judgment affirmed.

By the Court (Blake, C.J., Vuono & Neyman, JJ.[4]),

Paul Little

Clerk

Entered: April 16, 2026.

---

[4] The panelists are listed in order of seniority.