NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-497                                          Appeals Court

         COMMONWEALTH  vs.  ANTHONY VILLALOBOS.


                       No. 14-P-497.

     Suffolk.     September 10, 2015. - May 27, 2016.

          Present:  Green, Rubin, & Hanlon, JJ.


Homicide.  Assault and Battery.  Practice, Criminal, Required
     finding, Voir dire, Jury and jurors, Conduct of juror,
     Argument by prosecutor, New trial, Assistance of counsel,
     Admissions and confessions, Motion to suppress.  Evidence,
     Joint venturer, Admissions and confessions.



     Indictments found and returned in the Superior Court
Department on November 9, 2009.

     The cases were tried before Patrick F. Brady, J., and a
motion for a new trial was heard by him.


     Elda S. James for the defendant.
     Amanda Teo, Assistant District Attorney (David J. Fredette,
Assistant District Attorney, with her) for the Commonwealth.


     HANLON, J.  After a joint jury trial,[1] the defendant,

Anthony Villalobos, was convicted of the lesser included offense

_____

     [1] The defendant was tried jointly with three codefendants,
one of whom pleaded guilty on the ninth day of trial.  The

of involuntary manslaughter of Jose Alicea and two counts of assault and battery, one on Gregory Pimental[2] and one on Omar Castillo.[3]  He appeals from the convictions and also from the denial of his motion for a new trial, arguing that (1) the evidence was insufficient to support his convictions; (2) the judge erroneously failed to conduct a voir dire of allegedly sleeping jurors; (3) the prosecutor made improper and prejudicial statements during closing argument; and (4) trial counsel was ineffective in attempting to exclude at trial statements the defendant had made to the police, because counsel failed to raise the issue of whether the defendant had invoked his right to remain silent.  We affirm.

Background.  The jury could have found the following facts. On August 20, 2009, the defendant and a large group of others attended the funeral of a friend in Lynn; many of the funeral attendees wore red and black tuxedos to honor the deceased. Later that night, a group of the attendees went to Club 33 in

---

appeals of the two remaining codefendants were severed from Villalobos's appeal.

[2] We spell the victim's name as it appears in the parties' briefs.

[3] The defendant originally was charged with murder in the second degree.  The jury also found him not guilty of assault and battery by means of a dangerous weapon on both Omar Castillo and Gregory Pimental and not guilty of assault and battery on Japhet Mendoza.

Boston, arriving in two limousines, a Porsche and a Cadillac, with most still wearing the red and black tuxedos. The defendant was part of this group but, instead of a tuxedo, he was wearing a white T-shirt, a black button down shirt with a picture of his deceased friend on the back, and black pants; the defendant also had long braided (or corn-rowed) hair.

Also at Club 33 that night were the five victims.[4] At closing time, they left the club and walked by some of the defendant's group standing by the Porsche limousine. Jose Alicea yelled insults at the defendant's group, igniting a violent altercation between the two groups. There was testimony that between six and twenty men from the defendant's group were involved in the fight; none were seen to be "holding back" from the initial fray with Alicea, Castillo, and Pimental, nor did anyone attempt to stop the fight in general, or the beating of any particular individual. However, one of the limousine drivers, Kevin Fulcher, and a member of Club 33's security team, Joseph Cirino, unsuccessfully attempted to break up the brawl.

---

[4] The victims were Jose Alicea (who later died from severe head trauma), Omar Castillo (who suffered a perforated eardrum and contusion to the left eye), Gregory Pimental (who suffered multiple abrasions and a cut on the back of his head), Japhet Mendoza (who suffered a cut to the face and minor swelling), and Andres Sheppard (who suffered only a minor injury to his right hand).

At some point after the assault on Alicea, the group pursued Pimental, got him down on the ground, and, together, proceeded to kick and beat him. Part of this assault on Pimental was captured on Club 33's security cameras.

When the police arrived, some of the defendant's group fled, while others ran to each of the two limousines. The occupants of the Porsche limousine were identified and briefly interviewed by the police, and then released. After Cirino informed the police detectives that he could identify the individuals involved in the fight, the eighteen occupants of the Cadillac limousine, including the defendant, were subjected to an impromptu identification procedure. Cirino identified the defendant and three other men as the "more aggressive" participants in the fight; the defendant and eleven others were arrested at the scene.

Discussion. 1. Sufficiency of the evidence. The defendant first argues that the evidence was insufficient to prove his participation as a joint venturer in the charged offenses and, therefore, the judge erred in declining to allow his motion for a required finding of not guilty at the close of the Commonwealth's case. The defendant contends that none of the testifying witnesses specifically observed him participating in the assaults; there was conflicting testimony as to whether any member of the group that attacked the victims was "holding

back" from the brawl; and there was no physical evidence connecting the defendant to any of the assaults.

"We review the denial of a motion for a required finding of not guilty to determine 'whether the evidence viewed in the light most favorable to the Commonwealth could have "satisfied a rational trier of fact" of each element of the crimes charged beyond a reasonable doubt.'" Commonwealth v. Deane, 458 Mass. 43, 50 (2010), quoting from Commonwealth v. Garuti, 454 Mass. 48, 54 (2009) (citation omitted). Under the theory of joint venture, the Commonwealth was required to prove beyond a reasonable doubt that the defendant "was present at the scene of the [incident], with the knowledge that another intends to commit a crime or with intent to commit the crime and by agreement was willing and available to assist if necessary." Deane, supra at 50. "However, the Commonwealth is not required to prove exactly how a joint venturer participated." Ibid.

Based on the testimony of the witnesses who observed the brawl, and from the surveillance video recording that the jury viewed, the jury reasonably could have concluded that the defendant actively participated in the victims' beatings.[5] That

_____

[5] Specifically, Cirino had identified the defendant at the scene as having been involved in the brawl and as being among the "more aggressive" of the participants; his identification was corroborated by the surveillance video as well as by other eye witnesses. Another witness, Tracy Contreras, identified the defendant from the surveillance video as the person wearing a

is, viewing the evidence in the light most favorable to the Commonwealth, the jury could have found that the defendant "was at least a participant [in the brawl], even if he was not the sole perpetrator, and that he possessed the state of mind required for guilt."  Commonwealth v. Semedo, 456 Mass. 1, 8 (2010), quoting from Commonwealth v. Dyer, 389 Mass. 677, 683 (1983).  As in Commonwealth v. Chhim, 447 Mass. 370, 380 (2006), "[A] vicious beating of one man by several assailants creates an inference of intent to do grievous bodily harm or, at least, to do an act which would create a plain and strong likelihood of death."

"The jury 'may consider circumstantial evidence of guilt together with inferences drawn therefrom that appear reasonable and not overly remote.'"  Commonwealth v. Lao, 443 Mass. 770, 779 (2005), quoting from Commonwealth v. Andrews, 427 Mass. 434, 440 (1998).  "If, from the evidence, conflicting inferences are possible, it is for the jury to determine where the truth lies, for the weight and credibility of the evidence is wholly within

---

long sleeve black shirt with a light-colored square on his back standing behind the Cadillac limousine.  Witness Johanna Pena specifically placed the defendant in the midst of the red and black-attired group approaching the victims; very shortly afterwards, she saw Alicea on the ground.  She went to him and he spoke to her briefly before losing consciousness.  Cirino, Brian Jacobs and Dennis Lavita (other bouncers at Club 33), and Ceol Miguel Soto each testified that the entire group charged the victims, with none holding back or acting as peacemaker.

their province."  Lao, supra.  We are satisfied that there was no error in the denial of the defendant's motion for a required finding of not guilty.

2.  Failure to conduct a voir dire.  The defendant next argues that the convictions should be reversed because "the judge's failure to conduct a voir dire of two sleeping jurors was error."  On the eleventh day of trial, the prosecutor said to the judge that one juror had fallen asleep "several times" during the testimony.  The judge promised to "keep an eye on her" and to take action if necessary.  None of the defense counsel made any comment at all.  At the end of the court day, the judge raised the issue again, seeking clarification about which juror the prosecutor had been describing.  Once the prosecutor described her more particularly, the judge stated that he had watched the juror in question (and another) and "they both appear to be alert and taking notes . . . .  But if you see anything like that, bring it to my attention, and I'll pay special attention."  The defendant's lawyer said nothing.  A codefendant's lawyer stated that he had paid attention to the juror and "she seemed to be alert throughout the afternoon."  The judge responded, "Yes.  She seems to be smiling. . . .  So I'll keep watching and we'll see."

The following day, the prosecutor spoke to the judge about a different juror.  "Front row, third from the left.  He's got a

newborn baby. I mean, he was sound asleep during the cross-examinations. I don't know what you want me to do, Judge. I'll call the Court Officers [sic] attention to it." The judge asked, "[W]hat do you want me to do about it?" The prosecutor said, "I'm just raising the Court's attention to it." The judge responded, "I'll do my best if I notice it to take a stretch break or something." The prosecutor replied, "I think that both sides deserve to have jurors that are able to stay awake," and the judge stated, "Obviously, but I have to notice it." The prosecutor stated, "If they can't stay awake, then I want them excused. That's what I want." The judge responded, "Okay. That gentleman I have not noticed at any time prior to today falling asleep. I didn't notice it a half hour ago or hour ago." None of the three defense counsel said anything at all. Thereafter, the court took a break so that one of the defendants could go to the bathroom.

At the end of the court day, the judge called counsel to side bar, and said, "Okay. I was paying close attention to the juror." The prosecutor responded, "Everybody was good this afternoon, Judge, I agree. I think it helps with the window open, too." The judge then said, "And if I do see something, I will just take a stretch break." Again, all three defense counsel were silent.

"'A judicial observation that a juror is asleep, or a judge's receipt of reliable information to that effect, requires prompt judicial intervention to protect the rights of the defendant and the rights of the public, which for intrinsic and instrumental reasons also has a right to decisions made by alert and attentive jurors.' Commonwealth v. Dancy, 75 Mass. App. Ct. 175, 181 (2009). The judge has 'discretion regarding the nature of the intervention,' id., and not every complaint regarding juror attentiveness requires a voir dire, see Commonwealth v. Braun, 74 Mass. App. Ct. 904, 905 (2009). The burden is on the defendant to show that the judge's decision in the matter was 'arbitrary or unreasonable.' Commonwealth v. Brown, 364 Mass. 471, 476 (1973)." Commonwealth v. Beneche, 458 Mass. 61, 78 (2010).

The Supreme Judicial Court addressed this issue in three recent cases.[6] See Commonwealth v. McGhee, 470 Mass. 638 (2015); Commonwealth v. The Ngoc Tran, 471 Mass. 179 (2015); Commonwealth v. Vaughn, 471 Mass. 398 (2015).[7] In McGhee, a

---

[6] Both parties in this appeal filed their briefs before the opinions in those cases were released.

[7] In The Ngoc Tran, 471 Mass. at 189, both the prosecutor and the judge noticed that a juror appeared to be sleeping "and the defendant's trial counsel, deferring to the judge, requested that the juror be made an alternate. The judge instructed the clerk to do so. On appeal, the defendant argue[d] that this decision violated the statute concerning alternate jurors, which provides that 'the court shall direct the clerk to place the

juror reported to the court on the second day of trial that one of the jurors had been sleeping the day before during the testimony of two of the three victims in the case.[8]  Neither the prosecutor nor defense counsel had seen the juror sleeping and the judge "pointed out that '[s]ome people, when they concentrate, they close their eyes.'  The reporting juror responded:

> 'I agree with that, and that's why I questioned it for a while.  But when the snoring came; and there was one other thing that came after that.  It was -- you know when you wake up after a nap, the head nod, the bad breath.  That's what really hit me, was "Wow, he's really sleeping there."'"

names of all of the available jurors except the foreperson into a box . . . and to select at random the names of the appropriate number of jurors necessary to reduce the jury to the proper number of members required for deliberation in the particular case.'  G. L. c. 234A, § 68."  The court ruled that the argument was "unavailing.  While it may have been better practice for the judge to conduct a hearing to determine definitively whether the juror had been asleep and to what extent the juror was no longer capable of deliberating, see Commonwealth v. McGhee, 470 Mass. [at] 643-646 . . . , the defendant did not object at trial, and there is no indication that the designation of the sleeping juror as an alternate amounted to a substantial likelihood of a miscarriage of justice" (footnote omitted).  The Ngoc Tran, supra at 189-190.

[8] The juror in McGhee told the judge, "My concern was [that] through most of the morning proceedings I heard a lot of snoring going on; and I looked at the person, and the person wasn't paying any attention to the testimony going on.  After lunch when we came in, the snoring continued extremely loudly, to the point where it was interrupting me listening.  I kind of went like this [indicating] to the person next to me to show the person -- 'Look at this person,' and they were sound asleep through most of the afternoon trial."  McGhee, 470 Mass. at 642.

470 Mass. at 643.  Both the prosecutor and defense counsel asked the judge to "inquire" of the juror.  Instead, the judge determined that he would "'rather observe this individual now, and see what happens.  If he looks like he's not paying attention, we can take steps right now.'  Defense counsel asked the defendant, who was present at this discussion, 'Are you okay with that . . . ?' [and] the defendant responded, 'I'm good.'  At the end of the trial, the prosecutor stated that he had observed the identified juror 'throughout the course of the trial, and he appeared to be awake and paying attention, taking notes.'  The judge remarked that he had tried to watch the identified juror but had not been able to because of the juror's position in the jury box.  The judge added for the record, '[B]ecause of basically my failing to observe any sleepiness during the evidence, we have done nothing with him in that regard.'"  Ibid.

On appeal, the defendant argued to the court that the "judge's failure to inquire into the identified juror's ability to deliberate and decide the case on the evidence was a structural error that necessitate[d] a new trial."  Ibid.  The court agreed, concluding that "[t]here was no apparent cause to doubt the reliability of the account.  The judge's reason for taking no further action, except to 'observe [the identified juror] now, and see what happens,' was essentially that he had

not himself seen the juror sleeping.  But other reliable information besides a judge's observations also 'requires prompt judicial intervention.'  Commonwealth v. Beneche, 458 Mass. at 78, quoting Commonwealth v. Dancy, 75 Mass. App. Ct. at 181." (Footnotes omitted.)  McGhee, supra at 645.  In a footnote, citing Dancy, supra, the McGhee court also observed that "[t]he decision to observe the identified juror further was not an effective response to information that the juror had been sleeping.  If the identified juror missed important testimony on the first day of the trial, it is unlikely that, even if he was fully alert thereafter, he would 'remain[ ] capable of fulfilling his . . . obligation to render a verdict based on all of the evidence.'"  McGhee, supra at 645 n.5.

In Vaughn, 471 Mass. at 412, issued three months later, "[d]efense counsel first reported during a bench conference that he had observed a juror sleeping, including sleeping during the judge's instructions.  He also offered that the prosecutor had seen it as well.  Nothing in the record indicates the prosecutor's observations of the juror or his agreement or disagreement with defense counsel's observations.  Defense counsel offered no further description of why he thought the juror was sleeping beyond the excuse that he had not brought up the issue earlier in light of the possibility he may have observed a 'nervous reaction.' . . .  In his affidavit in

support of the defendant's motion for a new trial, defense counsel did not elaborate any further on his report at trial."[9]

The Vaughn court concluded that "[t]he defendant has failed to meet his burden. Although it is true that a judge must take action when confronted with evidence of a sleeping juror, the nature of that action is within the judge's discretion. . . . Beneche, 458 Mass. [at] 78 . . . . The defendant must show that the judge abused his discretion by making an arbitrary or unreasonable decision. Id." Vaughn, 471 Mass. at 412. The court noted that "counsel did not request any further action at the time of the initial report. In response to defense counsel's reports, the judge made his own observations of the juror. The judge did not observe the juror sleeping. He promised to continue his observations and to act should defense counsel's concerns prove founded. The next day, defense counsel revisited the issue, offering no further description of the asserted fact that the juror was sleeping and offering no new evidence that the juror had fallen asleep since the initial

---

[9] In Vaughn, the issue of the "sleeping juror" was raised in the context of a motion for a new trial on the grounds of ineffective assistance of counsel. 471 Mass. at 411. Before applying the standard in Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), the Vaughn court first considered whether the trial judge's response to counsel's report of a sleeping juror constituted an abuse of discretion. Id. at 412-413. The issue in our case is presented in the defendant's direct appeal, and we apply the latter standard.

report.  He asked that the juror be removed.  The judge declined to do so."  Ibid.  Compare Commonwealth v. Fritz, 472 Mass. 341, 353-354 (2015) (no abuse of discretion in declining to conduct voir dire where "trial judge found that he had been watching the jury and did not see any jurors sleeping").

Reading these cases together, along with Dancy and Beneche, it is clear that the issue is whether the defendant has met his burden of proving that the judge abused his "substantial discretion" by responding in an "arbitrary or unreasonable" way to a complaint that the juror was sleeping.  McGhee, 470 Mass. at 644.  In McGhee, the court ruled:  "[T]he judge must first determine whether that information is 'reliable.'  See Commonwealth v. Beneche, supra [at 78], quoting Commonwealth v. Dancy, 75 Mass. App. Ct. at 181.  In making this determination, the judge must consider the nature and source of the information presented, as well as any relevant facts that the judge has observed from the bench."  McGhee, supra.  In addition, the substance of the report that the juror was sleeping is also significant.  As this court noted in Dancy, "If the sleeping is observed at the outset or when the juror is beginning to 'nod off,' it is likely that a break or a stretch will suffice."  Dancy, supra at 181.

Finally, we consider whether the parties asked the judge to take any action and what response the judge gave.  We recognize

that "[t]he serious possibility that a juror was asleep for a significant portion of the trial is '[a] structural error . . . that so infringes on a defendant's right to the basic components of a fair trial that it can never be considered harmless' (omission in original). Commonwealth v. Dancy, 75 Mass. App. Ct. at 182, quoting Commonwealth v. Villanueva, 47 Mass. App. Ct. 905, 906 (1999)." McGhee, 470 Mass. at 645-646. Nonetheless, counsels' responses during the trial, based upon their personal observations and conclusions, are at least some indication of the seriousness of the possibility that the juror in question was in fact asleep for a significant portion of the trial. Cf. Commonwealth v. Miller, 457 Mass. 69, 80 (2010) (In a prosecutor's closing argument, "while the statement should not have been made, the defendant was not deprived of a fair trial. . . . Again, there was no objection by the defendant's trial counsel, suggesting that the tone of the remark was not a call to arms").

On balance, we are persuaded that the defendant has failed to meet his burden of showing that the judge abused his substantial discretion. Specifically, the facts here fall closer to those in Vaughn than those in McGhee, although the allegation was made initially by the prosecutor, rather than defense counsel. First, if the jurors in question did fall asleep, it appears to have been short-lived, brought as it was

to the immediate attention of the court by an alert prosecutor. Second, this defendant's lawyer said nothing at all about the issue; one codefendant's lawyer said only that one of the two jurors had appeared alert to him.  Despite the judge's explicit inquiry about what the prosecutor wanted him to do, no one requested that the judge conduct a voir dire, or excuse either juror -- or do anything other than monitor the situation. Thereafter, the record is clear that the judge did monitor the situation, as well as take at least one break, and offer to take others.[10]  As in Beneche, 458 Mass. at 78-79, "[t]he judge responded immediately to counsel's concerns, closely watched the juror, and monitored the situation.  Given the tentativeness of the information that the juror was sleeping, the judge's decision was reasonable."

3.  Closing argument.  The defendant also argues that the prosecutor made several prejudicial misstatements of the evidence during closing argument, improperly shifting the burden of proof to the defendant.  Because the defendant did not object to the closing argument at trial, we review for a substantial risk of a miscarriage of justice.  Commonwealth v. Grandison, 433 Mass. 135, 142 (2001).

---

[10] In addition, apparently, an open window may have helped to keep the jurors alert during this very long trial.

The defendant claims that the prosecutor improperly argued matters outside the scope of the evidence, claiming that the defendant was part of "the entire group" that beat the victims, when none of the testifying witnesses had observed the defendant specifically hit, punch, or kick the victims.  On the contrary, several eye witnesses identified the defendant as a member of the red and black-attired group that together participated in beating the victims, and an employee of the club, Cirino, identified the defendant as one of the three "more aggressive" persons in the group.  Video surveillance corroborated some of this testimony.

"A 'prosecutor is entitled to argue the evidence and fair inferences to be drawn therefrom.'"  Commonwealth v. Deane, 458 Mass. at 55-56, quoting from Commmonwealth v. Paradise, 405 Mass. 141, 152 (1989).  Based on the testimony, it was a fair inference that the defendant was an active participant in the crimes charged, and the prosecutor was permitted to "marshal the evidence and suggest inferences that the jury may draw from it." Commonwealth v. Roy, 464 Mass. 818, 829 (2013) (quotation omitted).  "Those inferences need only be reasonable and possible."  Ibid.  Considering, as we must, the "context of the whole argument, the evidence admitted at trial, and the judge's instructions to the jury," Commonwealth v. Shanley, 455 Mass. 752, 773 (2010) (quotation omitted), we see no error and

certainly no substantial risk of a miscarriage of justice.  See Commonwealth v. Johnson, 461 Mass. 1, 3 (2011).

4.  Motion for a new trial/ineffective assistance.  The defendant finally argues that the judge erred in denying his motion for a new trial based on ineffective assistance of counsel.  The basis of his motion is that, during the hearing on the motion to suppress, counsel failed to argue that, when the defendant stated, "I just don't wanna talk about it because --," he was invoking his right to remain silent, yet the police continued to question him.  The defendant contends that counsel instead argued that the defendant did not receive the full Miranda warnings.  It is clear, in the defendant's view, that counsel did not listen to the audio tape of the defendant's police interview, but, rather, relied on an incomplete transcript in making his argument.  In fact, the complete transcript showed that the officer had given the full warnings required.

The defendant's argument fails for several reasons.  First, in November, 2009, counsel was given a copy of the audio recording of the police interview as part of the Commonwealth's discovery, and the full audio recording was played at the voir dire hearing on the defendant's midtrial motion to suppress.  It is clear that counsel had an opportunity to hear the recording

in its entirety at least at the time of the hearing.[11]  After hearing the recording, the judge concluded that the defendant had been advised of his rights and that "the statements that he made were made voluntarily.  The statements that he made were essentially[,] from his perspective[,] exculpatory, which reflect[ed] a mind that [was] aware of some self interest.  He clearly heard and understood his rights.  The detective explained them very clearly and made clear that he didn't have to talk if he didn't want to."

Second, at the hearing on the motion for new trial, the judge found that the statement in question was "in the context of not wanting to put his initials on the Miranda form.  That's the way [the detective] understood it, it appears from the transcript."[12]

---

[11] The voir dire transcript also indicates that counsel did, in fact, bring to the judge's attention the defendant's statement at issue, albeit briefly.  Counsel stated, "There was a point in the interview where he says, 'I don't want to talk about this,' . . . [a]nd that entreaty was completely ignored by the police officer."

[12] The transcript of the police interview with the defendant included the following:

> Q.:  "Can you -- See a pen right there?  See where it says initials?  Can you place your initials at the end of that line?"

> A.:  "Do I have to?"

> Q.:  "You don't have to do anything."

To succeed on a claim of ineffective assistance in pursuing a motion to suppress, the defendant "must demonstrate that the evidence would have been suppressed if properly challenged, and that counsel's failure to pursue such a challenge created a substantial [risk] of a miscarriage of justice." Commonwealth

---

> A.: "Mm-hmm. Well, --"
>
> Q.: "If you prefer not to put your initials there, you don't have to put your initials there."
>
> A.: "No, I don't want to write it because it's -- I just don't wanna talk about it because --"
>
> Q.: "Okay. Well, I'll read through and you don't have to do -- do anything. [The detective then read the defendant's Miranda rights, concluding,] Okay. With that in mind, I'd like to talk about what happened last night. You can talk to me if you want to, and you don't have to."

Thereafter, the detective explained that he wanted to tape the interview.

> Q.: "I prefer, as do the courts and the judges, that everything get taped because then there's no -- no --"
>
> A.: "Well, --"
>
> Q.: "-- trickery involved --"

The defendant agreed, and a short conversation followed, with the defendant denying being part of the fight.

> Q.: "Now, are you saying that you weren't up in that?"
>
> A.: "No, I wasn't."

The defendant then said that he wanted to speak with a lawyer and the detective ended the interview immediately.

v. Cavitt, 460 Mass. 617, 626 (2011). "A motion for a new trial will be allowed 'if it appears that justice may not have been done.'" Id. at 625, quoting from Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2011).

After a hearing on the defendant's motion to exclude the challenged statement, the judge found, based on the audio recording, that the defendant was given the full Miranda warnings and that he "clearly heard and understood his rights." Shortly after the challenged statement was made, the defendant exercised his right to speak with an attorney, and the interview ended immediately; in the judge's opinion, this was "reflective of a mind that is aware of what is going on, understands his rights, [and] is able to make voluntary decisions."

"In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error. The weight and credibility to be given oral testimony is for the judge." Commonwealth v. Murphy, 442 Mass. 485, 492 (2004). Here, the judge's findings are supported by the evidence and he correctly applied the law to the facts. Counsel's failure to pursue at the hearing the challenge the defendant now puts forth on appeal did not create a substantial risk of a miscarriage of justice. See Cavitt, 460 Mass. at 626. In addition, based on the foregoing, counsel's behavior did not fall "measurably below that which might be expected from an

ordinary fallible lawyer."  Commonwealth v. Kolenovic, 471 Mass. 664, 673 (2015), quoting from Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  We see no error in the denial of the defendant's motion for a new trial, and discern no abuse of discretion.  See Commonwealth v. Diaz, 75 Mass. App. Ct. 347, 350 (2009).

> Judgments affirmed.
>
> Order denying motion for new trial affirmed.

RUBIN, J. (dissenting).  With respect to the reports of sleeping jurors, this case is controlled in all material respects by Commonwealth v. McGhee, 470 Mass. 638 (2015), under which it must be reversed or, at the very least, remanded for further proceedings.

McGhee applied the rule that "a judge's receipt of reliable information" to the effect that a juror is asleep "requires prompt judicial intervention."  Id. at 644 (emphasis added), quoting from Commonwealth v. Beneche, 458 Mass. 61, 78 (2010), in turn quoting from Commonwealth v. Dancy, 75 Mass. App. Ct. 175, 181 (2009).  In McGhee, the judge received information from a juror that another juror had been asleep during testimony. Rather than taking "any . . . steps to determine if [the] juror was fit to deliberate," id. at 645, the judge decided simply to observe the juror going forward.  The judge explained later that "because of basically my failing to observe any sleepiness during the evidence, we have done nothing with [the juror]" in terms of addressing the report that he was asleep.  Id. at 643.

The Supreme Judicial Court held that in the face of a reliable account of a juror sleeping, "prompt judicial intervention" was required, regardless whether the judge himself had seen the juror sleeping.  The court held that "[b]ecause the judge conducted no further inquiry to determine whether and, if

so, when the identified juror was sleeping, 'there is a serious doubt that the defendant received the fair trial to which he is constitutionally entitled.'" Id. at 645, quoting from Commonwealth v. Braun, 74 Mass. App. Ct. 904, 906 (2009). The court held that even though the defendant had acquiesced in the procedure utilized by the judge, "[t]he serious possibility that a juror was asleep for a significant portion of the trial is '[a] structural error . . . that so infringes on a defendant's right to the basic components of a fair trial that it can never be considered harmless.'" McGhee, supra at 645-646, quoting from Commonwealth v. Dancy, supra at 182. The court vacated the convictions and remanded the case for a new trial.

This case presents essentially the same fact pattern. On the eleventh day of trial, the prosecutor said to the judge that one juror had fallen asleep several times during the testimony. The judge said he would "keep an eye on her." Later the judge said that he had watched the juror in question as well as another one and "they both appear[ed] to be alert and taking notes." The judge said he would "keep watching." The next day the prosecutor spoke to the judge about a different juror stating that "he was sound asleep during the cross-examinations." The prosecutor said, "[B]oth sides deserve to have jurors that are able to stay awake," which is correct.

Just like the judge in McGhee, the judge said, "Obviously, but I have to notice it."

Assuming the prosecutor's reports were reliable, the judge's failure to take any action with respect to the prosecutor's reports of a sleeping juror amounts to precisely the error that required a new trial in McGhee. Indeed, the misunderstanding of the judge, who of course did not have the benefit of McGhee, which was decided during the pendency of this appeal, that he was not to take action unless he personally observed a juror sleeping was exactly the same mistake that led to the Supreme Judicial Court's decision in McGhee itself. See McGhee, 470 Mass. at 645 ("The judge's reason for taking no further action, except to 'observe [the identified juror] now, and see what happens,' was essentially that he had not himself seen the juror sleeping. But other reliable information besides a judge's observations also requires prompt judicial intervention" [quotation and citation omitted]).

The majority apparently concludes that the Supreme Judicial Court's unanimous opinion in Commonwealth v. Vaughn, 471 Mass. 398 (2015), amounted to a modification of the unanimous opinion in McGhee issued just three months earlier. The majority states that Vaughn means that mere future observation of a juror by a judge is an adequate response to reliable evidence of a juror sleeping, and that the judge's decision simply to observe the

juror going forward rather than taking any action to determine whether the juror was asleep must be upheld unless it is an abuse of discretion in the sense of an arbitrary or unreasonable decision.

This is a misreading of Vaughn. In Vaughn, the Supreme Judicial Court did not qualify its ruling in McGhee. Rather, Vaughn was a case about determining whether a report about a sleeping juror is sufficiently reliable that the rule requiring intervention is triggered.

As the court explained in McGhee, "[I]f a judge receives a complaint or other information suggesting that a juror was asleep or otherwise inattentive, the judge must first determine whether that information is 'reliable.'" McGhee, 470 Mass. at 644. In Vaughn, the report of a sleeping juror came from defense counsel, who reported during a bench conference that he had observed a juror sleeping. As the court described in Vaughn, "Defense counsel offered no further description of why he thought the juror was sleeping beyond the excuse that he had not brought up the issue earlier in light of the possibility he may have observed a 'nervous reaction.'" 471 Mass. at 412.

The Supreme Judicial Court understood the judge's actions to mean that "the trial judge did not find defense counsel's assertions reliable enough to warrant further action, particularly where counsel said that the juror slept during the

judge's instructions to the jury and the judge would necessarily have been looking at the jury." Ibid. As the Supreme Judicial Court explained, "Defense counsel's report gave no description of the characteristics of the juror's alleged slumber beyond likening it to a 'nervous reaction,' an empty illustration explained by myriad possibilities. More importantly, defense counsel did not ask for a voir dire. In fact, he initially requested the judge do nothing at that time. The judge was entitled to rely on his own observations to reach the conclusion that the report of a sleeping juror was not sufficiently reliable to warrant further action when made only by defense counsel without a request for a voir dire." Id. at 412-413. Because there was no error in finding the report insufficiently reliable, there was no error in the failure to intervene.

In this case it was the prosecutor rather than defense counsel who raised the issue. In McGhee, the Supreme Judicial Court concluded that a report from another juror was sufficiently reliable that no express finding with respect to reliability was required. The court concluded that there was "no apparent cause to doubt the reliability of this account" and therefore the judge was required to intervene. 470 Mass. at 645.

The exact same thing could be said here. I can understand an argument, however, that the correct course in this case might

be to remand the case for a finding by the trial judge concerning the reliability of the prosecutor's report.  And in order to ensure that justice is done, I could go along with such a disposition of this case.  The court majority, however, concludes that the judge's failure to intervene in the face of a reliable report of a sleeping juror was within his discretion. It therefore simply affirms the defendant's convictions. Although I agree with all other portions of the majority opinion, because the disposition of the sleeping-juror claim appears to me to contravene clear Supreme Judicial Court precedent, I respectfully dissent.