NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-280

COMMONWEALTH

vs.

ANTHONY VILLALOBOS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Anthony Villalobos, appeals from his conviction by a Superior Court jury of the involuntary manslaughter of Jose Alicea. The defendant argues that the evidence was insufficient to prove that he participated in the beating of the victim, or that he acted with the requisite intent. We affirm.

Background. We set forth the facts in the light most favorable to the Commonwealth based on the evidence at trial, including the security video footage. See Commonwealth v. Carleton, 497 Mass. 11, 13 (2026), citing Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).

On August 20, 2009, the defendant attended a funeral in Lynn.  Many of the attendees, including the defendant, wore black and red clothing as a tribute to the deceased.  That evening, a group of at least twenty of the mourners, including the defendant, traveled in limousines to a nightclub on Stanhope Street in the Back Bay section of Boston.  Most of the group were men wearing similar black and red clothing, except that the defendant's black collared shirt had a photograph of the deceased on the back that from a distance looked like a white square.  The defendant was the only one wearing that shirt.

At about 2 A.M., the nightclub closed and hundreds of patrons crowded the street outside.  The nightclub's doorman asked people in the crowd to move along and not block the street.  Among the crowd were the victim and his friends Omar Castillo and Gregory Pimental.  Also in the crowd were the men wearing black and red clothing.  At 2:01 A.M., security video footage depicted the defendant, wearing the black shirt with the white square on the back, standing on Stanhope Street near a Cadillac Escalade limousine.

At 2:04 A.M., the defendant was milling with others in his group on Cahners Place, a short street that runs from Stanhope Street to Columbus Avenue.  The victim began "running his mouth" to the men in black and red.  Using obscenities and racial epithets, the victim yelled, "Come on, . . . , I'll take you[]

2

all on."  Hearing the argument, the doorman walked up Cahners

Place and stood between the two groups, trying verbally to

deescalate the situation.

Someone from the defendant's group threw a beer bottle at

the victim's group.  At 2:06 A.M., the defendant went up Cahners

Place with the other men in black and red.  The men in black and

red went around the doorman and charged at the victim, Castillo,

and Pimental.

About thirty seconds later, around the corner on Columbus

Avenue, the men in black and red caught the victim and began

attacking him.  The doorman was trying to break up the fight by

pushing the combatants away from each other.  On the other side

of the group, the nightclub's head of security was also trying

to break up the fight.  The men in black and red were kicking

the victim vigorously and punching him as he lay on the ground.

The victim suffered severe head trauma and lost consciousness.

The men in black and red also attacked Pimental and Castillo.[1]

At 2:07 A.M., the defendant walked about halfway back down

Cahners Place, where he stopped and bent over and grabbed his

---

[1] The judge entered a required finding of not guilty on an indictment alleging assault and battery on Pimental, who did not testify.  The jury acquitted the defendant of assault and battery by means of a dangerous weapon and assault and battery on Castillo.

3

knees, as if catching his breath.  He then got into the Cadillac limousine.

When the police arrived, the victim was lying in the right travel lane of Columbus Avenue, bleeding and unresponsive, with multiple abrasions and lacerations to his face and head.  In the Cadillac limousine were at least fourteen people.  The police conducted a showup procedure in which people were taken out of that limousine one at a time and viewed by the doorman.  The doorman identified twelve men as having been "involved in the fight" on Columbus Avenue.  One of the men the doorman identified was the defendant.[2]  On the back of the defendant's pants was a bloodstain, but the DNA it contained was not consistent with that of the victim, Castillo, or Pimental.

The victim never regained consciousness and was pronounced dead on August 23, 2009.  He died of multiple blunt force injuries to his head, causing trauma to his brain.

The defendant was charged with offenses including the second-degree murder of the victim.  At a 2011 trial, he was convicted of the lesser included offense of involuntary manslaughter.  On appeal, we held that the evidence at that

---

[2] Of fourteen men in the limousine, the doorman identified twelve as having been involved in the fight.  As to the other two men, he either did not recognize them or did not remember them.

4

trial was sufficient to prove the defendant's participation either as principal or as a joint venturer in the beating death of the victim. Commonwealth v. Villalobos, 89 Mass. App. Ct. 432, 435 (2016). On further appellate review, the Supreme Judicial Court agreed that the evidence was sufficient, but reversed the conviction on another ground. Commonwealth v. Villalobos, 478 Mass. 1007, 1009 (2017). A second trial in 2019 ended in a mistrial.

In 2022, at the jury trial underlying this appeal, the defendant again was convicted of the involuntary manslaughter of the victim. The defendant filed a postconviction motion for a required finding, Mass. R. Crim. P. 25 (b) (2), as amended, 420 Mass. 1502 (1995), which the judge denied. The defendant appeals from his conviction.

Discussion. The defendant argues that the evidence was insufficient to convict him of involuntary manslaughter on an aiding and abetting theory because it did not identify him as one of the participants in the beating of the victim. We are not persuaded.

As the judge instructed, involuntary manslaughter is defined as either an unlawful killing unintentionally caused by a battery, or wanton or reckless conduct that causes death. See Commonwealth v. Moscaritolo, 497 Mass. 220, 230 (2026). "Such wanton or reckless conduct is intentional conduct that create[s]

5

a high degree of likelihood that substantial harm will result to another person" (quotation and citation omitted). Id. See Commonwealth v. Welansky, 316 Mass. 383, 387, 397 (1944). To convict the defendant on an aiding and abetting theory, the Commonwealth was required to prove that he intentionally participated in beating the victim or aided and assisted another person in doing so with the intent of making the crime succeed. See Commonwealth v. Zanetti, 454 Mass. 449, 467 (2009). See also Marshall v. Commonwealth, 463 Mass. 529, 535 (2012). "[T]he Commonwealth is not required to prove exactly how a joint venturer participated in the [homicide]." Commonwealth v. Deane, 458 Mass. 43, 50 (2010). "Direct evidence of who [inflicted blows on] the victim is not required where . . . there is strong circumstantial evidence that one of the [assailants] [inflicted blows on] the victim[]" (quotation and citation omitted). Commonwealth v. Chipman, 418 Mass. 262, 268 (1994). At the same time, we "bear in mind a fundamental limitation on joint venture liability:  it does not sweep so broadly as to establish a form of guilt by association." Commonwealth v. Bonner, 489 Mass. 268, 276 (2022).

The doorman identified the defendant as "one of the people on Columbus Ave. involved in the fight."  That identification was corroborated by the video footage, which we have carefully reviewed, that depicted the defendant moving with the group of

6

men in black and red toward the location of the beating on Columbus Avenue shortly before it, and walking away from that area shortly afterwards, seemingly out of breath. The identification was also corroborated by the testimony of the nightclub's head of security that the "whole group" of men in black and red was participating in beating the victim, "everybody was getting a turn kicking the guy or beating him up," and "[t]hey were taking turns like kicking him . . . they would squeeze in between some of their friends, they would kick him."

In holding that the evidence at the 2011 trial sufficed to prove that the defendant participated as a joint venturer in the beating death of the victim, we noted that at that trial the doorman "had identified the defendant at the scene as having been involved in the brawl and as being among the 'more aggressive' of the participants." Villalobos, 89 Mass. App. Ct. at 435 n.5. At the 2022 trial, there was no evidence that the doorman had described the defendant as one of the more aggressive participants, but the doorman did testify that he had identified the defendant as having been "involved in the fight." "[V]iewing the evidence in the light most favorable to the Commonwealth, the jury could have found that the defendant 'was at least a participant [in the brawl], even if he was not the sole perpetrator, and that he possessed the state of mind

7

required for guilt'" (citation omitted).  <u>Villalobos</u>, <u>supra</u> at 435.

<u>Judgment affirmed</u>.

By the Court (Grant, Walsh & Brennan, JJ.[3]),

Clerk

Entered:  June 5, 2026.

---

[3] The panelists are listed in order of seniority.